

Thomas M. Herlihy (SBN 83615)
Laura E. Fannon (SBN 111500)
KELLY, HERLIHY & KLEIN LLP
44 Montgomery Street, Suite 2500
San Francisco, CA 94104-4602
Telephone: (415) 951-0535
Facsimile: (415) 391-7808

Attorneys for Defendant
PENN TREATY NETWORK AMERICA INSURANCE
COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**HRL**

GLORIA McCARROLL,

          Plaintiff,

  vs.

PENN TREATY NETWORK
AMERICA INSURANCE COMPANY,
and DOES 1 through 10, inclusive,

          Defendants.

CASE NO. **C 07 5025**

**NOTICE OF REMOVAL OF CAUSE TO FEDERAL COURT**

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

NY1:\1517864\01\WJ6W01!.DOC\67442.0016

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1441(a) and 1446, Defendant Penn Treaty Network America Insurance Company ("Penn Treaty") hereby removes this action to this Court, on the ground that this Court has original jurisdiction over this action under 28 U.S.C. § 1332. The following facts were true as of the date the complaint was filed and remain true as of the filing of this notice of removal.

1.  On August 24, 2007, plaintiff Gloria McCarroll ("Plaintiff") filed a Summons and Complaint, styled *Gloria McCarroll v. Penn Treaty Network America Insurance Company,* Case No. 1 07 CV 092905, in the Superior Court for the State of California, County of Santa Clara. A copy of Plaintiff's Summons and Complaint, together with various state court documents served with the complaint, are annexed hereto as Exhibit A. Penn Treaty has not been served with, nor has it received, any other pleadings pertaining to the action other than those included in Exhibit A.

2.  On August 31, 2007, the Summons and Complaint was served upon Corporation Service Company ("CSC"), as registered agent for Penn Treaty. Penn Treaty received copies of the Summons and Complaint from CSC on or about September 4, 2007.

3.  As this Notice of Removal is filed within thirty days of Penn Treaty's receipt of the Summons and Complaint, it is timely under 28 U.S.C. § 1446.

<u>NATURE OF THE ACTION</u>

4.  This action is brought by a Penn Treaty long-term care insurance policyholder.

5.  Plaintiff's Complaint includes five counts for relief. First, Plaintiff alleges that Penn Treaty breached its obligations under the insurance policy by allegedly failing and refusing to pay benefits due under the policy. *See* Complaint ¶¶ 9, 15. Second, Plaintiff alleges that Penn Treaty breached its duty of good faith and fair dealing owed to Plaintiff "through the

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

2

1  adoption of techniques and practices designed to frustrate Plaintiff's efforts to obtain insurance

2  benefits." Complaint ¶ 19. Plaintiff seeks punitive damages based on Penn Treaty's alleged bad

3  faith. Complaint ¶ 22. Third, Plaintiff seeks restitution and/or injunctive relief under the

4  California Business & Professions Code Section 17200 based upon Penn Treaty's alleged

5  unlawful business practice of requiring information from insureds not reasonably required for, or

6  material to, the resolution of claims such as that filed by Plaintiff. Complaint ¶¶ 25, 27. Fourth,

7  Plaintiff alleges a count for negligent infliction of emotional distress based upon Penn Treaty's

8  handling of Plaintiff's claim for benefits. Complaint ¶ 30. Penn Treaty's alleged negligent

9  conduct has caused Plaintiff to incur general damages, including mental and emotional distress.

10  Complaint ¶ 31. Finally, Plaintiff seeks "all remedies described" in the Complaint (which would

11  again include punitive damages) based upon Penn Treaty's purported misrepresentation that it

12  would "deliver benefits as promised." Complaint, ¶¶ 33-35.

13

14  ## GROUNDS FOR REMOVAL

15

16  6.    Removal is proper under this Court's original diversity subject matter

17  jurisdiction, conferred upon this Court by 28 U.S.C § 1332.

18  7.    Under that section, this Court has original subject matter jurisdiction over

19  civil actions in which complete diversity of citizenship exists between the plaintiff and the

20  defendant, and in which the amount in controversy, exclusive of interest and costs, exceeds

21  $75,000.

22  ## Diversity of Citizenship

23

24  8.    Complete diversity of citizenship exists between Plaintiff and Penn Treaty.

25  Plaintiff is a resident and citizen of the State of California. *See* Complaint ¶ 1. Penn Treaty is,

26  and at the time of the filing of this action was, a Pennsylvania corporation with its principal place

27  of business in Allentown, Pennsylvania. Under 28 U.S.C. § 1441(a), the Court must disregard the

28  citizenship of defendants sued under fictitious names, and consider only the citizenship of named

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

1  defendants.  Therefore, complete diversity of citizenship exists between Plaintiff and the only

2  known Defendant, Penn Treaty.

Amount in Controversy

4      9.      The allegations in the Complaint demonstrate that the amount in

5  controversy more likely than not exceeds $75,000, exclusive of costs and interest.  *See Sanchez v.*

6  *Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (standard for determining amount in

7  controversy is whether the amount "more likely than not" exceeds the jurisdictional minimum).

8  Plaintiff seeks contract damages, punitive and exemplary damages, as well as costs and attorney's

9  fees.  When determining the amount in controversy, in addition to considering a plaintiff's

10  potential compensatory damages, a court may consider a plaintiff's potential punitive damages

11  and a potential award of attorneys' fees, to the extent authorized.  *See Bell v. Preferred Life*

12  *Assur. Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943) ("Where both actual and punitive

13  damages are recoverable under a complaint each must be considered to the extent claimed in

14  determining jurisdictional amount."); *Ansley v. Metropolitan Life Ins. Co.*, 215 F.R.D. 575, 577

15  (D. Ariz. 2003).

16      10.      With respect to Plaintiff's contract claim, the Complaint alleges that

17  Plaintiff is entitled to "skilled nursing and home health care coverage."  Complaint ¶ 7.  Under

18  Plaintiff's insurance policy, "[f]or each day you receive Homemaker Care in Your Home and

19  meet the Homemaker Care Benefits Conditions of Eligibility, We will pay the lesser of: (1) the

20  actual charge incurred; or (2) the Maximum Daily Benefit listed in the Policy Schedule."  *See*

21  Exhibit A to the Declaration of Thomas M. Herlihy ("Herlihy Decl."), at 7.  The policy further

22  provides that "[f]or each day you are confined to a Nursing Facility and meet the Conditions of

23  Eligibility, We will pay the lesser of: (1) the actual charge incurred; or (2) the Maximum Daily

24  Benefit listed in the Policy Schedule."[1]  The "Maximum Daily Benefit" allegedly provided under

25  the policy was $100.00 per day.  Complaint ¶ 7.

---

[1] *See* Herlihy Decl., Ex. A, at 13.

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

1    11.    Plaintiff alleges that she was entitled to, but was not paid benefits for

2 skilled nursing and home health care from October 17, 2006 through November 13, 2006. *Id.*

3 Plaintiff also alleges that she satisfied the 100-day elimination period set forth in her policy. *Id.*;

4 *see also* Herlihy Decl., Ex. A, at 3. Thus, Plaintiff was allegedly eligible for benefits for 28 days.

5 Therefore, under the allegations in the Complaint, Plaintiff alleges she is entitled to recover

6 $2,800 (28 x $100 maximum daily benefit amount), exclusive of costs and interests, on her

7 contract claim. While Penn Treaty does not believe that Plaintiff is entitled to such relief, for

8 purposes of the amount in controversy, such potential damages are appropriately considered by

9 the Court.

10    12.    Plaintiff also asserts a claim for fraud and inducement. According to

11 Plaintiff, based on representations by Penn Treaty that Plaintiff would be paid certain benefits,

12 she agreed to purchase the policy. Compl. ¶ 34. Plaintiff suggests that had she known these

13 representations were false, she would not have purchased the policy. While Penn Treaty does not

14 believe that Plaintiff is entitled to any relief on the claim for fraud and inducement, for purposes

15 of the amount in controversy, such potential damages are appropriately considered by the Court.

16    13.    Plaintiff's Complaint also seeks punitive damages, which are legally

17 available under California law for both bad faith and misrepresentation claims, and thus must be

18 included in the amount in controversy for purposes of removal.

19    14.    To establish probable punitive damages for purposes of determining the

20 amount in controversy, Penn Treaty may introduce evidence of jury verdicts in cases involving

21 analogous facts. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

22    15.    In this case, Plaintiff alleges that Penn Treaty breached the duty of good

23 faith and fair dealing owed to Plaintiff by implementing practices designed to impede Plaintiff's

24 efforts to obtain insurance benefits. Complaint ¶ 19. Specifically, Plaintiff alleges that Penn

25 Treaty requested multiple copies of the same records, falsely advised Plaintiff that records had not

26 been received, and requested information irrelevant to the adjudication of Plaintiff's claim for

27 benefits. *Id.* Penn Treaty's failure to pay benefits was allegedly done "fraudulently, and with a

28 conscious disregard of Plaintiff's rights, such as to constitute oppression, fraud, or malice under

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

California Civil Code § 3294, entitling Plaintiff to exemplary damages in an amount appropriate to deter or set an example" of Penn Treaty.  Complaint ¶ 22.

16.    In addition to the bad faith claim, as noted above, Plaintiff alleges that Penn Treaty made certain, false representations and promises to Plaintiff when she agreed to purchase the policy.  Complaint ¶ 33.  According to Plaintiff, she relied on these allegedly false representations to her detriment.  Complaint ¶¶ 34-5.

17.    In cases where, as here, an insured seeks punitive damages based upon the insurer's alleged bad faith denial of benefits, punitive damages satisfying the amount in controversy have been awarded.  Evidence of punitive damage awards in analogous cases is no different than what courts have looked at and found to be acceptable proof that the amount in controversy is satisfied for removal purposes.  For example, in *Ansley v. Metro. Life Ins. Co.*, the court concluded that the amount in controversy was satisfied based on "cases cited by [Defendant] in its notice of removal, all which [sic] involved disability insurance bad faith.  In each case, Plaintiff was awarded at least $500,000 in punitive damages."[2]  215 F.R.D. at 578.

18.    Similarly, in *Nasiri v. Allstate Indemnity Company*, 99 Civ. 3942 (N.D. Cal.), the defendant satisfied the amount in controversy requirement by citing in its Notice of Removal evidence of punitive damages awarded in other similar cases.  *See Nasiri v. Allstate Indem. Co.*, 2000 U.S. Dist. LEXIS 17673 (N.D. Cal. Nov. 15, 2000), *aff'd* 41 Fed. Appx. 76 (9th Cir. July 3, 2002).[3]  In *Nasiri*, the plaintiff alleged that the insurer engaged in dilatory claims handling practices, as well as deceptive, coercive and abusive practices to avoid payment of the claim at issue.  *See Herlihy Decl.*, Ex. C (*Nasiri* Complaint ¶¶ 17-19).  The plaintiff in *Nasiri* also alleged that the insurer failed and refused to adopt and implement reasonable standards for the prompt investigation and processing of the claim at issue.  *Id.* (*Nasiri* Complaint ¶ 13).  Similarly,

---

[2] *See* Herlihy Dec., Ex. B at 3-4 (Notice of Removal filed in *Ansley*) (citing *Greenberg v. Paul Revere Life Ins. Co.*, D. Ariz. No. 99-CV-154; *Hangarter v. Paul Revere Life Ins. Co.*, 2002 WL 31526543 (N.D. Cal. Nov. 11, 2002); *McKendry v. General Amer. Life Ins. Co.*, No. CIV 96-0754; *Diamond v. Gen. Am. Life Ins. Co.*, Maricopa County Super. Ct., No. CV 96-02277; *Zilisch v. State Farm Auto Ins. Co.*, 194 Ariz. 34 (1998)).

[3] *See* Herlihy Dec., Ex. c at 3-4 (Notice of Removal filed in *Nasiri*) (citing *Moore v. American United Life Ins. Co.*, 150 Cal. App. 3d 610, 635-6, 642 (1984); *Wetherbee v. United Ins. Co. of Amer.*, 18 Cal. App. 3d 266, 271-72 (1971)).

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

1  here Plaintiff alleges that Penn Treaty's claims adjudication process is "designed to make the

2  obtaining of benefits as difficult as possible for its elderly insureds," and to "frustrate Plaintiff's

3  efforts to obtain insurance benefits." Complaint ¶¶ 34, 19.  Moreover, Plaintiff alleges that Penn

4  Treaty failed to adopt and implement reasonable standards for the prompt investigation and

5  processing of claims.  Complaint ¶ 25.  The core allegations underlying the complaint in *Nasiri*

6  are no different from those made in Plaintiff's complaint.

7        19.    The evidence offered by Penn Treaty regarding punitive damage awards in

8  similar bad faith cases is thus sufficient to satisfy the amount in controversy requirement, and is

9  the type of evidence that courts, including in *Ansley* and *Nasiri*, have previously accepted.  There

10  are no allegations in the Complaint suggesting that Plaintiff is not seeking punitive damages

11  exceeding $75,000.

12        20.    Punitive damages satisfying the amount in controversy have also been

13  awarded in cases where an insurer allegedly misrepresented the terms of an insurance policy.  For

14  example, in *Wetherbee v. United Ins. Co.*, 18 Cal. App. 3d 266, 271-72 (1971), the insured

15  recovered $200,000 in punitive damages where the insurance company allegedly misrepresented

16  the terms of an insurance policy in order to prevent the insured from terminating the policy.

17  Likewise, in *Payton v. Alfa Insurance Co.*, No. CV-95-15, Lowndes County Circuit Court

18  (Alabama 1996), the insured recovered $80,000 in punitive damages where the insurance

19  company allegedly misrepresented to plaintiff that her various homeowners insurance policies

20  would provide complete coverage for her home.  The evidence offered by Penn Treaty regarding

21  punitive damage awards in other misrepresentation cases further demonstrates that the amount in

22  controversy requirement is satisfied in the context of this action.

23        21.    Accordingly, Plaintiff's allegations as to contractual damages, and

24  evidence of punitive damage awards in similar cases, demonstrate that the amount in controversy

25  more likely than not exceeds $75,000.

26        WHEREFORE, Penn Treaty requests that the Superior Court of the State of California, for

27  the County of Santa Clara, proceed no further with Case No. 1 07 CV 092905, and that said

28

NOTICE OF REMOVAL OF CAUSE TO
FEDERAL COURT

1    action be removed from that court to the United States District Court for the Northern District of

2    California.

3    Dated: September **27**, 2007                    KELLY, HERLIHY & KLEIN, LLP

4

5                                                     By:
                                                          Thomas M. Herlihy
6                                                         Attorneys for Defendant
                                                         PENN TREATY NETWORK AMERICA
7                                                         INSURANCE COMPANY

8

9    E:\27228\P02

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     NOTICE OF REMOVAL OF CAUSE TO
     FEDERAL COURT

**EXHIBIT  A**

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**ENDORSED**

2007 AUG 24 P 1: 27

~~[illegible stamp text]~~

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PENN TREATY NETWORK AMERICA INSURANCE COMPANY,
and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GLORIA McCARROLL

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Santa Clara<br>191 North First Street<br>San Jose, California 95113 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**1 07 C V 0 9 2 9 0 5** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gary S. Rose (CA Bar #83744) Phone: (408) 399-4566
FLYNN, ROSE & PERKINS, 59 N. Santa Cruz Ave. #Q, Los Gatos, CA 95030

| | | | |
|---|---|---|---|
| DATE: **AUG 2 4 2007**<br>*(Fecha)* | Kiri Torre<br>Chief Executive Officer/Clerk<br>Clerk, by *(Secretario)* | *Wendell* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Penn treaty network America Insurance company

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):* Entity type unknown

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

GARY S. ROSE, Calif. Bar #83744
FLYNN, ROSE & PERKINS
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399-4566

Attorneys for Plaintiff
GLORIA McCARROLL

ENDORSED

2001 SEP 24 P 1: 27

Wendel

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

GLORIA McCARROLL,                    )    Case No. **1 0 7 C V 0 9 2 9 0 5**
                                     )
            Plaintiff,               )    COMPLAINT
                                     )    (Breach of Contract, Breach of the Covenant of
vs.                                  )    Good Faith and Fair Dealing, Negligent
                                     )    Infliction of Emotional Distress, Unfair Business
PENN TREATY NETWORK AMERICA          )    Practices, Fraud)
INSURANCE COMPANY, and DOES 1        )
through 10, inclusive,               )
                                     )
            Defendants.              )
                                     )
                                     )

Plaintiff alleges:

## FACTS COMMON TO ALL CAUSES OF ACTION

1.      Plaintiff is, and at all times mentioned herein was, a resident of the County of Santa

Clara, State of California, and was 74 years old at the time of the events complained of herein.

2.      Plaintiff is informed and believes and thereon alleges that Defendant PENN Treaty

Network America Insurance Company, (hereinafter referred to as "PENN"), is a corporation

licensed to practice and carry out the business of insurance in the State of California.

3.      Total damages related to the loss complained of herein exceed the jurisdictional

minimum of this Court.

4.      The true names and capacities, whether individual, corporate or otherwise of

Defendants DOES 1 through 10, inclusive, are unknown to Plaintiff at this time. Plaintiff is

informed and believes and thereon alleges that each of the Defendants designated as a DOE is

1  responsible in some manner for the events and happenings herein referred to, and caused injury

2  and damage proximately thereby to Plaintiff as herein alleged.

3      5.     On or about August 6, 2001, Defendant issued to Plaintiff a Long Term Care

4  Insurance policy, number N772186, which included coverage for skilled nursing and home care

5  services. Plaintiff's policy is attached as **Exhibit 1**.

6      6.     On or about June 7, 2006, Plaintiff was admitted to Good Samaritan Hospital with

7  multiple acute conditions, which eventually involved an L2 to L4 diskectomy, followed by

8  complications including renal failure, infection, and other health conditions which resulted in her

9  hospitalization until June 25, 2006.  Thereafter, she was discharged to a skilled nursing facility

10 known as Plum Tree Care Center in Los Gatos, California.  She later transferred to The Terraces

11 of Los Gatos. Plaintiff's Medicare coverage provides indemnity for skilled nursing services for up

12 to 100 days.

13     7.     The policy purchased by Plaintiff promised her coverage for skilled nursing and

14 home-based care after her 100-day benefit period with Medicare expired.  The maximum daily

15 benefit was $100.00.  The Plaintiff satisfied her 100-day deductible on October 17, 2006, and

16 thereafter was entitled to the promised skilled nursing and home health care coverage, which

17 continued through November 13, 2006.

18     8.     Plaintiff timely notified PENN of her claim for home healthcare benefits.

19     9.     Thereafter, Defendant unreasonably failed and refused, and continued to fail and

20 refuse, to adjust Plaintiff's claim promptly, fairly and adequately.

21     10.    Said Defendant further failed to cooperate with Plaintiff, failed to respond to her

22 inquiries, and has failed to abide by regulations regarding the fair handling of claims.

23     11.    On July 16, 2007, Plaintiff's counsel faxed a letter to PENN Treaty advising it of

24 Plaintiff's situation, and providing supporting evidence establishing her entitlement to benefits.

25 PENN ignored this communication. (**Exhibit 2**).

26     12.    The relationship between Plaintiff and the Defendant was fiduciary in nature.

27     13.    Plaintiff has fully complied with the terms and conditions imposed upon her by the

28 policy of insurance identified herein.  As a result of Defendant's unreasonable and wrongful

conduct, Plaintiff was required to retain the services of legal counsel; Plaintiff seeks her reasonable attorney's fees under Brandt v. Superior Court.

14. In conscious, wanton and willful disregard of its obligations, duties, and representations to Plaintiff, Defendant failed to properly investigate and thereafter effectuate the prompt, fair and equitable settlement of this claim, notwithstanding the fact that liability for said claim is clear, and has failed to act in good faith responding to Plaintiff's claim.

PLAINTIFF, FOR A FIRST COUNT AGAINST DEFENDANT, FOR BREACH OF CONTRACT, ALLEGES:

14. Plaintiff realleges and incorporates herein by reference each and every allegation of Paragraphs 1-13, inclusive of this Complaint.

15. Defendant, by failing to make prompt and full payment under the policy, breached said insurance contract.

16. As a direct and proximate result of the breach of contract by said Defendant, Plaintiff has been injured in a sum representing the benefits due her, plus interest thereon, from the date said payments should have been made under the terms of the policy.

17. As a further direct and proximate result of the breach of contract by Defendant, Plaintiff has suffered and will continue to suffer consequential damages in an amount to be shown according to proof at trial.

PLAINTIFF, FOR A SECOND COUNT AGAINST DEFENDANT, FOR BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING, ALLEGES:

18. Plaintiff realleges and incorporates herein by reference each and every allegation of Paragraphs 1-17, inclusive of this Complaint.

19. In committing the acts and omissions as further set forth in this Complaint, Defendant breached its duty of good faith and fair dealing owed to Plaintiff through the adoption of techniques and practices designed to frustrate Plaintiff's efforts to obtain insurance benefits, including, without limitation, requesting multiple copies of the same records, falsely advising Plaintiff that records had not been received, and requesting information not reasonably necessary to the adjudication of her claim.

20. Plaintiff is informed and believes and thereon alleges that Defendant breached the duty of good faith and fair dealing by committing other acts and omissions of which Plaintiff is presently unaware. Plaintiff will seek leave of this Court to amend this Complaint at such time as she discovers the other acts and omissions of said Defendant, constituting such breach.

21. As a direct and proximate result of the aforementioned wrongful conduct, Plaintiff has been deprived of timely payment of the sums due to her, and has suffered anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, causing Plaintiff to suffer general and special damages in an amount to be proved at trial, but in all events, greater than the jurisdictional minimum of this Court.

22. Defendant's failure to provide the promised benefits was done fraudulently, and with a conscious disregard for Plaintiff's rights, such as to constitute oppression, fraud, or malice under California Civil Code §3294, entitling Plaintiff to exemplary damages in an amount appropriate to deter or set an example of said Defendant.

PLAINTIFF, FOR A THIRD COUNT AGAINST DEFENDANT FOR INJUNCTIVE RELIEF AND RESTITUTION PURSUANT TO BUSINESS & PROFESSIONS CODE SECTION 17200, ET SEQ. ALLEGES:

23. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1-22, inclusive, of this Complaint.

24. Plaintiff is informed and believes and thereon alleges that Defendant has engaged in, and continues to engage in, the unlawful claims practices as alleged above.

25. Defendant PENN has further engaged in unlawful business practices by its multiple acts of bad faith and unfair claims practice, by seeking information from the insured not reasonably required for, or material to, the resolution of Plaintiff's claim, by failing to respond to written and telephone inquiries from Plaintiff, failing to adopt and implement reasonable standards for the prompt investigation and the processing of claims, failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been satisfied, and by harassing Plaintiff by requesting multiple copies of documentation. Plaintiff is informed and believes that she is not the only insured exposed to such practices.

26. Said business practices unlawfully benefited PENN by allowing it to avoid paying benefits owed its insureds, and granting it a competitive advantage over other law-abiding

companies.

27. Plaintiff seeks restitution and/or injunctive relief for herself and similarly situated insureds who have been exposed to the claims practices described above, and suffered a loss of promised benefits thereby.

PLAINTIFF, FOR A FOURTH COUNT AGAINST DEFENDANT FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ALLEGES:

28. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 27, inclusive, of this Complaint.

29. The actions of Defendant, as set forth above, constitute negligent conduct and willful violation of the common law standards described above, in addition to other statutory violations including, but not limited to the failure to respond to Plaintiff's inquiries. These actions were not privileged, and were likely to cause Plaintiff emotional distress and suffering.

30. By failing to respond to Plaintiff's written and telephone inquiries, and delaying the processing of the claim, PENN was aware that such conduct could, and would, cause extreme emotional distress to someone in Mrs. McCarroll's position.

31. The negligent action of the Defendant alleged hereinabove have caused Plaintiff to incur general damages, including mental and emotional distress.

PLAINTIFF, FOR A FIFTH COUNT AGAINST DEFENDANT FOR FRAUD AND INDUCEMENT, ALLEGES:

32. Plaintiff realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 31, inclusive, of this Complaint.

33. In making the promises and representations contained in the policy, Defendant knew that Plaintiff and others like her would rely on the representations therein, and agree to purchase the policy.

34. Plaintiff did indeed rely on said promises and representations in purchasing the policy, and was unaware of their falsity. However, Plaintiff is informed and believes and thereon alleges that Defendant did not intend to deliver benefits as promised, that it adopted a system of claims adjudication designed to cause the denial and/or refusal to pay benefits as promised, despite the Plaintiff's clear entitlement thereto. Further, Plaintiff is informed and believes that Defendant has adopted a claims adjudication process designed to make the obtaining of benefits as difficult as possible for its elderly insureds, in the hope and expectation that many of them will give up on the

effort.

35. As a direct and proximate result of said fraud and fraudulent inducement, Plaintiff has been damaged as hereinabove set forth, and seeks all remedies described therein.

WHEREFORE, Plaintiff prays judgment against Defendant, as follows:

(1)    For the amount of the benefits due pursuant to the contract of insurance, according to proof at trial;

(2)    For interest on the payments not made, from and after the dates at which such payments should have been made;

(3)    For general damages according to proof;

(4)    For special damages according to proof;

(5)    For exemplary damages in an amount appropriate to deter or set an example of Defendant;

(6)    For prejudgment interest on the damages alleged herein as allowed by law;

(7)    For attorneys' fees and costs of suit incurred herein; and

(8)    For such other and further relief as the Court may deem just and proper.

DATE: August 24, 2007                          FLYNN, ROSE & PERKINS

By _____
   GARY S. ROSE
   Attorney for Plaintiff GLORIA
   McCARROLL

## California Life and Health Insurance
## Guarantee Association Act
## Summary Document and Disclaimer

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guarantee Association ("CLHIGA"). The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guarantee Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided through the Association is not unlimited, as noted in the box below, and is not a substitute for consumers' care in selecting insurers.

The California Life and Health Insurance Guarantee Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guarantee Association to induce you to purchase any kind of insurance policy.

Policyholders with additional questions should first contact their insurer or agent or may then contact:

California Life and Health Insurance                 Consumer Service Division
Guarantee Association                                California Department of Insurance
P.O. Box 17319                                      300 South Spring Street
Beverly Hills, CA 90209-3319                         Los Angeles, CA 90013

Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

## COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guarantee Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

(please turn over)

NOTICE (CA)



## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guarantee Association if:

- Their insurer was not authorized to do business in this state when it issued the policy or contract;
- Their policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society;
- They are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Guarantee Association also does not provide coverage for:

- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarantee rights to group contract holders, not individuals;
- Employer and association plans, to the extent they are self-funded or uninsured;
- Synthetic guaranteed interest contracts;
- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- Any policy of reinsurance unless an assumption certificate was issued;
- Interest rate yields that exceed an average rate;
- Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNTS OF COVERAGE  The Act limits the Association to pay benefits as follows:

## LIFE AND ANNUITY BENEFITS

- 80% of what the life insurance company would owe under a life policy or annuity contract up to
- $100,000 in cash surrender values,
- $100,000 in present value of annuities, or
- $250,000 in life insurance death benefits.
- A maximum of $250,000 for any one insured life no matter how many policies and contracts there were with the same company, even if the policies provided different types of coverages.

## HEALTH BENEFITS

- A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

## PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.


## NOTICE (CA)

# PENN TREATY NETWORK AMERICA LIFE INSURANCE COMPANY[SM]

3440 Lehigh Street, PO Box 7066
Allentown, PA 18105-7066
(800) 362-0700



## COMPREHENSIVE LONG TERM CARE
### THIS POLICY PROVIDES BENEFITS FOR CARE PROVIDED IN YOUR HOME, IN YOUR COMMUNITY & IN A LONG TERM CARE FACILITY

## TAX-QUALIFIED STATUS

This contract for Long Term Care insurance is intended to be a federally qualified Long Term Care insurance contract and may qualify You for federal and state tax benefits.

## GUARANTEED RENEWABLE FOR LIFE - PREMIUMS SUBJECT TO CHANGE

This Policy is guaranteed renewable for Your lifetime, subject to the Policy maximums. It may be kept in force by the timely payment of premiums. We cannot refuse to renew this Policy as long as You pay the premiums when due. We cannot change the renewal premium rates for this Policy during the first three (3) years that it is in force. We also cannot change the premium rates due to a change in Your age or health; We can only change them if they are changed for all policies in Your state on this Policy form.  Such a change would have to be filed with and approved by Your state commissioner of insurance. Notice of any such change in premiums will be sent at least thirty-one (31) days in advance. (Payment of the renewal premium will not restore or replenish the benefits available under this Policy. Please refer to the Policy's **Restoration of Benefits** provision on Page 18 to learn how benefits may be restored.)

## NOTICE OF THIRTY (30) DAY RIGHT TO EXAMINE POLICY

Carefully read this Policy as soon as You receive it. If You are not satisfied for any reason, You may return it to Us, or Our authorized agent, within thirty (30) days of Your receiving it. We will refund the entire premium paid directly to You within thirty (30) days of the Policy being returned.  Upon Our receipt of the returned Policy, the Policy will be considered void from the beginning.

*NOTICE TO BUYER:  This Policy may not cover all of the costs associated with Long Term Care incurred by the buyer during the period of coverage.  The buyer is advised to review carefully all Policy limitations.*

CAUTION: THE ISSUANCE OF THIS POLICY IS BASED UPON YOUR RESPONSES TO THE QUESTIONS ON YOUR APPLICATION. A COPY OF YOUR APPLICATION IS ATTACHED. IF YOUR ANSWERS ARE INCORRECT OR UNTRUE, WE HAVE THE RIGHT TO DENY BENEFITS OR RESCIND YOUR POLICY. THE BEST TIME TO CLEAR UP ANY QUESTIONS IS NOW, BEFORE A CLAIM ARISES! IF, FOR ANY REASON, ANY OF YOUR ANSWERS ARE INCORRECT, CONTACT US AT OUR HOME OFFICE: 3440 LEHIGH STREET, PO BOX 7066, ALLENTOWN, PA 18105-7066.

*PF2600-2-TQ(CA)R*

*PAGE 1*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
|  |  | 1 |
| 1. | Tax-Qualified Status | 1 |
| 2. | Renewability Terms | 1 |
| 3. | Notice of Thirty (30) Day Right to Examine Policy | 1 |
| 4. | Notice to Buyer | 1 |
| 5. | Caution Statement | 3 |
| 6. | Policy Schedule | 4 |
| 7. | Section I: Home Care and Community-Based Care Benefits | 4 |
|  | Homemaker Care Benefits | 6 |
|  | Personal Care Benefits | 7 |
|  | Home Health Care Benefits | 8 |
|  | Adult Day Care Benefits | 9 |
|  | Hospice Care Benefits | 10 |
|  | Respite Care Benefits | 11 |
|  | Early Notification of Claim Benefits | 12 |
| 8. | Section II: Facility Benefits | 12 |
|  | Assisted Living Facility Benefits | 13 |
|  | Nursing Facility Benefits | 14 |
| 9. | Section III: Conditions of Eligibility | 16 |
| 10. | Section IV: Additional Benefits | 16 |
|  | Care Solutions$^{SM}$ Benefits | 16 |
|  | Family Member as Caregiver Benefits | 17 |
|  | Family Member Training Benefits | 17 |
|  | Meals on Wheels Benefits | 17 |
|  | Bed Reservation Benefits | 18 |
|  | Alternative Plan of Care Benefits | 18 |
|  | Restoration of Benefits | 19 |
|  | Waiver of Premium Benefits | 20 |
| 11. | Section V: Benefit Limitations | 20 |
|  | Maximum Daily Benefit | 20 |
|  | Maximum Lifetime Benefit | 20 |
|  | Home/Community-Based Care Elimination Period | 21 |
|  | Facility Elimination Period | 21 |
|  | Pre-Existing Conditions Limitation | 22 |
| 12. | Section VI: Additional Features | 22 |
|  | Third Party Notification of Lapse | 22 |
|  | Reinstatement for Loss of Cognitive/Functional Capacity | 22 |
|  | Our Promise – Your Right to Convert to a non-tax-qualified Policy | 23 |
|  | Extension of Benefits | 24 |
| 13. | Section VII: Exclusions | 25 |
| 14. | Section VIII: General Contract Provisions | 26 |
|  | Claims Under this Policy – What to do when You have a Claim | Attached |
| 15. | Application |  |

# POLICY SCHEDULE

POLICY NUMBER  N772186

EFFECTIVE DATE
08/06/01
FIRST RENEWAL DATE
08/29/01

INSURED  GLORIA L MCCARROLL

AGE  68

INITIAL PREMIUM
$293.33

POLICY FEE
$25.00

RENEWAL PREMIUM
$361.39

## PREMIUMS

ANNUAL
$4,015.44

SEMI-ANNUAL
$2,088.03

QUARTERLY
$1,064.09

MONTHLY
$361.39

AUTOMATIC BANK WITHDRAWAL (MONTHLY)
$341.31

## BENEFITS

| | |
|---|---|
| MAXIMUM DAILY BENEFIT | $100.00 |
| MAXIMUM LIFETIME BENEFIT | $150,000.00 |
| HOME/COMMUNITY-BASED CARE ELIMINATION PERIOD | 100  DAYS |

(The **Home/Community-Based Care Elimination Period** shown is applicable
when **Early Notification of Claim** is provided.  The **Home/Community-Based
Care Elimination Period** will be increased by thirty (30) days if **Early Notification
of Claim** is not provided.  Please refer to the **Early Notification of Claim** provision
on Page 11 for more details.)

| | |
|---|---|
| FACILITY ELIMINATION PERIOD | 100  DAYS |
| RESTORATION OF BENEFITS | INCLUDED |

(THE PREMIUMS SHOWN ABOVE INCLUDE PREMIUMS FOR ANY RIDERS ISSUED ON THE SAME DATE AS THIS POLICY).

### RIDERS ISSUED ON THE SAME DATE AS THIS POLICY

*PF2600-2-TQ(CA)R*

*PAGE 3*

## SECTION I: HOME CARE AND COMMUNITY-BASED CARE BENEFITS

This section tells You about the benefits available for care and assistance received in Your home and community and explains how You qualify for these benefits.

Important words and terms, which will help You understand the benefits available under this Policy, and the circumstances under which these benefits are payable, appear in **bold print** throughout the Policy. They appear in *italicized bold print* where they are defined.

Whenever "You" and "Your" appears in this Policy, it refers to the Insured listed in the Policy Schedule. "We", "Us" and "Our" refers to Penn Treaty Network America Life Insurance Company[SM].

## HOMEMAKER CARE BENEFITS

For each day You receive **Homemaker Care** in Your **Home** and meet the **Conditions of Eligibility**, We will pay the lesser of:

1) the actual charge incurred; or
2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

> The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Homemaker Care* is assistance with the **Instrumental Activities of Daily Living**. **Homemaker Care** may be provided by a skilled or unskilled person capable of helping with these activities.

The *Instrumental Activities of Daily Living* are the basic functional activities necessary for You to remain safely in Your **Home** and include the following:

1) Meal Preparation is the preparation of food for human consumption, including cooking and cleanup.
2) Shopping/Travel is utilizing public or private transportation to get to a store and shop for groceries, pick up prescriptions and to get to medical appointments.
3) Light Housekeeping is maintaining a clean **Home** living environment so that Your health, safety and welfare are not jeopardized. Light Housekeeping does not include any type of **Home** construction or maintenance, work on the exterior of the

*PF2600-2-TQ(CA)R*                                                                 *PAGE 4*

Home, heavy cleaning such as annual "spring cleaning", lawn care, snow removal, maintenance of a vehicle, or any other service provided outside the **Home**.

4) <u>Laundry</u> is washing, drying and storing Your clothing, bed linens, etc.

5) <u>Telephoning</u> is using a telephone to make calls.

6) <u>Handling Money/Bill Paying</u> is depositing and/or withdrawing funds at a financial institution, writing checks to pay bills, etc.

7) <u>Medication Management</u> is safely controlling, dispensing and/or administering medications prescribed by a **Physician** in the proper dosages and at the proper times.

*Home* is Your personal residence, whether it is in a private dwelling owned or leased by You, and includes a home for the retired or aged. It does not include a hospital, sanitarium, **Assisted Living Facility** or **Nursing Facility**. (Please refer to Page 12 for the definition of **Assisted Living Facility** and Page 13 for the definition of **Nursing Facility**.)

*Physician* is anyone, other than You or a **Family Member**, properly licensed as a practitioner of the healing arts and operating within the scope of that license.

A *Family Member* is You and Your spouse, and Your and Your spouse's respective parents, grandparents, siblings, children, grandchildren, aunts, uncles, cousins, nephews, nieces and in-laws.

# PERSONAL CARE BENEFITS

For each day You receive **Personal Care** in Your **Home** and meet the **Conditions of Eligibility**, We will pay the lesser of:

        1) the actual charge incurred; or

        2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

---

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

---

*Personal Care* is assistance with the **Activities of Daily Living** and/or assistance with the **Instrumental Activities of Daily Living**. **Personal Care** may be provided by a skilled or unskilled person capable of helping with these activities. (Please refer to Page 14 for the definition of **Activities of Daily Living** and Page 4 for the definition of **Instrumental Activities of Daily Living**.)

# HOME HEALTH CARE BENEFITS

For each day You receive **Home Health Care** in Your **Home** and meet the **Conditions of Eligibility**, We will pay the lesser of:

      1) the actual charge incurred; or

      2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

---

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

---

*Home Health Care* is skilled nursing services or other medical services, performed by a licensed registered nurse (RN), licensed practical nurse (LPN), licensed vocational nurse (LVN), chemotherapy specialist, enterostomal specialist, total parenteral nutrition specialist, physical therapist, speech therapist, occupational therapist or any other duly-licensed provider of said services.

# ADULT DAY CARE BENEFITS

For each day You receive **Adult Day Care** and meet the **Conditions of Eligibility**, We will pay the lesser of:

        1) the actual charge incurred; or
        2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

**Adult Day Care** is medical or non-medical care provided on a less than 24-hour basis in an **Adult Day Care Center** for persons in need of personal services, supervision, protection and/or assistance in sustaining daily needs, including the **Activities of Daily Living** and taking medications.

    **Adult Day Care Center** is a facility, which is established and operated in accordance with any applicable state, or local laws required in order to provide **Adult Day Care** and is licensed, if so required.

*PF2600-2-TQ(CA)R*

# HOSPICE CARE BENEFITS

For each day You receive **Hospice Care** and meet the **Conditions of Eligibility**, We will pay the lesser of:

1) the actual charge incurred; or
2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

> The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Hospice Care* is an outpatient service designed to provide palliative care; alleviate the physical, emotional, social and spiritual discomforts when You are experiencing the last phases of life due to the existence of a terminal disease; and provide supportive care to Your primary caregiver and Your family.

# RESPITE CARE BENEFITS

For each day You receive **Respite Care** and meet the **Conditions of Eligibility**, We will pay the lesser of:

      1) the actual charge incurred; or
      2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Respite Care* may be Homemaker Care, Personal Care, Home Health Care, or care provided in an **Assisted Living Facility**, **Nursing Facility** or **Adult Day Care Center**, the purpose of which is to temporarily relieve the primary caregiver. (Please refer to Page 12 for the definition of **Assisted Living Facility** and Page 13 for the definition of **Nursing Facility**.)

This benefit is payable for a maximum of fifteen (15) days per calendar year and is not subject to the **Home/Community-Based Care Elimination Period** or the **Facility Elimination Period**. Any days not used in a calendar year cannot be carried over to any subsequent years. (Please refer to Page 20 for the definition of **Home/Community-Based Care Elimination Period** and Page 21 for the definition of **Facility Elimination Period**.)

*PF2600-2-TQ(CA)R*

# Early Notification of Claim

As previously stated, You will be eligible for the **Home/Community-Based Care Elimination Period** shown in the Policy Schedule, if You, or someone authorized to act on Your behalf, notifies Us that You are receiving, or will be receiving, care/assistance for which benefits may be payable under this Policy. To notify Us, You must call Our Claims Department at (800) 362-0700 and tell Us that You are receiving, or will be receiving, care/assistance covered by this Policy. You should specifically tell Us that You are calling to give Us "**early notification**" that You will have a claim. If **Early Notification of Claim** is not provided, the **Home/Community-Based Care Elimination Period** shown in the Policy Schedule will be increased by thirty (30) days.

To be eligible for the **Home/Community-Based Care Elimination Period** shown in the Policy Schedule, You must call Us within fifteen (15) calendar days of the care/assistance beginning. We will acknowledge Your having satisfied this **Early Notification of Claim** provision by mailing You a written confirmation within five (5) business days of Your contacting Our office. Notifying Your agent does not satisfy the **Early Notification of Claim** provision. You, or Your personal representative, must call Our office at (800) 362-0700 to satisfy this provision.

When You call Our office, We may have an in-house Registered Nurse speak to You to gather information about Your condition and evaluate Your needs. If this telephone interview does not provide Us with the information We need to properly assess Your claim, We may follow-up by having a health care professional (usually a Registered Nurse) from Your local area visit You to conduct a face-to-face assessment. The purpose of such an assessment is to provide Us with information about what You can and cannot do for Yourself and what type of care/assistance You need to be able to safely live at **Home**. When Your needs are assessed by either an in-house Registered Nurse or a health care professional, he/she will develop a written **Plan of Care** designed to meet Your individual needs.

*PF2600-2-TQ(CA)R*

**SECTION II: FACILITY BENEFITS**
This section tells you about the benefits available for care and assistance received in a long-term care facility.

## ASSISTED LIVING FACILITY BENEFITS

For each day You are **confined** to an **Assisted Living Facility** and meet the **Conditions of Eligibility**, We will pay the lesser of:

1. the **Assisted Living Facility's Daily Fee**; or
2. the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

**Confined** is assigned to a bed and physically present within the facility.

An **Assisted Living Facility** is a facility licensed by the appropriate federal or state agency to engage primarily in providing care and unscheduled services to resident inpatients and which:

1. provides twenty-four (24) hour a day care and services sufficient to support needs resulting from inability to perform **Activities of Daily Living** and/or **Cognitive Impairment**;
2. has a trained and ready to respond employee on duty at all times to provide care and services;
3. provides three (3) meals a day and accommodates special dietary needs; and
4. has the appropriate methods and procedures to provide necessary assistance to residents in the management of prescribed medications.
   (Please refer to Page 14 for the definition of **Activities of Daily Living** and Page 15 for the definition of **Cognitive Impairment**.)

If a facility or institution (such as a congregate care facility or life care community) has multiple licenses and/or multiple purposes, only the section, wing, ward or unit (including a separate room or apartment) that specifically qualifies as an **Assisted Living Facility** will be covered by this Policy.

An **Assisted Living Facility** may sometimes be called a licensed Residential Care Facility, Adult Congregate Living Facility, Personal Care Facility or Sheltered Living Facility. Any facility, or section thereof, known by one of these names, or any other name, will be considered eligible if it meets this Policy definition of an **Assisted Living Facility**.

**Assisted Living Facility's Daily Fee** is the facility's daily rate for room and board and assisted living care provided by the **Assisted Living Facility's** staff, and ancillary supplies and services. Incidental expenses, such as **Physician's** services, medications, pharmaceuticals, toiletries, transportation charges and beautician's services will not be considered as part of the **Assisted Living Facility's Daily Fee**.

*PF2600-2-TQ(CA)R*

*PAGE 12*

# NURSING FACILITY BENEFITS

For each day You are **confined** to a **Nursing Facility** and meet the **Conditions of Eligibility**, We will pay the lesser of:

      1) the **Nursing Facility's Daily Fee**; or
      2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 12 for the definition of **confined** and Page 14 for the **Conditions of Eligibility**.)

A **Nursing Facility** is a facility, or distinctly separate part of a hospital or other institution, which is licensed by the appropriate federal or state agency to engage primarily in providing nursing care and related services to inpatients, and which:

      1) provides twenty-four (24) hour a day nursing services;
      2) has a nurse on duty or on call at all times;
      3) maintains clinical records for all patients; and
      4) has appropriate methods and procedures for handling and administering drugs and biologicals.

If a facility or institution (such as a congregate care facility or life care community) has multiple licenses and/or multiple purposes, only the section, wing, ward or unit (including a separate room or apartment) that specifically qualifies as a **Nursing Facility** will be covered by this Policy.

A **Nursing Facility** may sometimes be called a Skilled Nursing Facility, Intermediate Care Facility or Custodial Care Facility. Any facility, or section thereof, known by one of these names, or any other name, will be considered eligible if it meets this Policy's definition of a **Nursing Facility**.

**Nursing Facility's Daily Fee** is the daily rate for room and board, nursing care provided by the **Nursing Facility's** staff, and ancillary supplies and services. Incidental expenses, such as **Physician's** services, medications, pharmaceuticals, toiletries, transportation charges and beautician's services, will not be considered as part of the **Nursing Facility's Daily Fee**.

*PF2600-2-TQ(CA)R*

*PAGE 13*

## SECTION III: CONDITIONS OF ELIGIBILITY
This section explains how You become eligible for the benefits of the Policy.

The care/assistance You require must be provided pursuant to a **Plan of Care** developed by a **Licensed Health Care Practitioner** which certifies that You are a **Chronically Ill Individual**. To be certified as a *Chronically Ill Individual*:

1) You must be unable to perform at least two (2) **Activities of Daily Living** without **Substantial Assistance** for a period of at least ninety (90) days due to the loss of functional capacity;

OR

2) You must require supervision to protect You from threats to health and safety due to **Severe Cognitive Impairment**.

The *Plan of Care* specifies the type of care/assistance that is necessary and certifies that You are a **Chronically Ill Individual**. This certification must be made at the time the care/assistance is received, or during the preceding twelve (12) months. (Certification of Your condition may be required periodically, but not more than once every thirty-one (31) days.)

A *Licensed Health Care Practitioner* is any **Physician** or any registered professional nurse, licensed social worker, or other individual who meets the requirements prescribed by the Secretary of Health and Human Services. If You choose to use Our free **Care Solutions**<sup>SM</sup> service, We can provide a **Care Coordinator** who may act as the **Licensed Health Care Practitioner**. (Please refer to Page 5 for the definition of **Physician** and Page 16 for the definitions of **Care Solutions**<sup>SM</sup> and **Care Coordinator**.)

*Activities of Daily Living* are the basic human functional abilities required for You to remain independent. They are as follows:
1) <u>Eating</u> is feeding oneself by getting food into the body from a receptacle, (such as a plate, cup or table), or by a feeding tube or intravenously.
2) <u>Bathing</u> is washing oneself by sponge bath, or in either a tub or shower, including getting into and out of the tub or shower.
3) <u>Dressing</u> is putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.
4) <u>Transferring</u> is moving into or out of a bed, chair or wheelchair.
5) <u>Toileting</u> is getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
6) <u>Continence</u> is the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel and/or bladder function, the ability to perform associated personal hygiene, including caring for catheter or colostomy bag.

*Substantial Assistance* may be **Hands-on Assistance** and/or **Standby Assistance**.

*Hands-on Assistance* is the physical assistance of another person, without which You would be unable to perform the **Activity of Daily Living**.

*Standby Assistance* is the presence of another person within arm's reach of You that is necessary to prevent, by physical intervention, injury to You while You are performing an **Activity of Daily Living**.

*Severe Cognitive Impairment* is confusion and/or disorientation resulting from a deterioration or loss of intellectual capacity that is not related to, or a result of, mental illness, but which can result from Alzheimer's disease and other forms of Organic Brain Syndrome. **Severe Cognitive Impairment** must result in Your requiring supervision to maintain Your safety and/or the safety of others. This deterioration or loss of intellectual capacity may be established through the use of standardized tests that reliably measure impairment in the following areas: short-term and/or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning.

# SECTION IV: ADDITIONAL BENEFITS
This section tells You about the extra benefits available with this Policy and explains how You can receive them.

## CARE SOLUTIONS<sup>SM</sup>

When You need care/assistance covered by this Policy, We can offer You access to a **Care Coordinator** through the **Care Solutions<sup>SM</sup>** services We make available to Our Policyholders free of charge. The **Care Coordinator** will perform an assessment of Your needs and work with You, Your family and Your **Physician** to see that those needs are met. The **Care Coordinator** will develop a **Plan of Care**, which describes the level of care/assistance You require, the type of caregiver necessary and the schedule of the care/assistance to be rendered. The **Care Coordinator** will also follow-up with You to ensure the plan of care continues to be appropriate in the likely event that Your needs change.

The **Care Coordinator** can also help You identify the care resources available in Your community and contact the caregivers You select to arrange for the delivery of the care/assistance required.

A **Care Coordinator** is a health care professional, usually a Registered Nurse, We contract with to provide Our Policyholders the **Care Solutions<sup>SM</sup>** services described above.

**Care Solutions<sup>SM</sup>** is a free service We offer all of Our Policyholders who need assistance making arrangements for care. Whether You use it is entirely up to You. Use of this service will not reduce, or be paid for through, the benefits of the Policy.

The **Care Coordinator** may also act as the **Licensed Health Care Practitioner** and develop the **Plan of Care** You must have in order to be eligible for benefits under the Policy. (Please refer to Page 12 of this Policy for the definitions of **Licensed Health Care Practitioner** and **Plan of Care**.)

## FAMILY MEMBER AS CAREGIVER BENEFITS

**Homemaker Care, Personal Care** and **Home Health Care** provided by a **Family Member** or someone already living at Your address prior to the inception of, or need for, the care/assistance, is not covered by this Policy, unless the caregiver is pre-approved by Us.

To obtain pre-approval of care/assistance provided by a **Family Member**, other than a spouse or someone living with You prior to the inception of, or need for, the care/assistance, You simply have to call Our Claims Department at (800) 362-0700 to inform Us that You need care/assistance covered by this Policy and that You would like a **Family Member** to provide a portion or all of the care/assistance. We will then ask for information pertaining to Your needs, the **Family Member** and the schedule of the care/assistance to be provided by the **Family Member**.

(Spouses and individuals living with You prior to the inception of, or need for, the care/assistance, will not be eligible for benefits under any circumstances.)

*PF2600-2-TQ(CA)R*

# FAMILY MEMBER TRAINING BENEFITS

If the **Family Member** requires training to provide the care/assistance You need at **Home**, We will provide a **Family Member Training Benefit** for reimbursement of this training. The training must be for the purpose of preparing the **Family Member** to provide for Your care and be pre-approved by Us.

We will pay a lifetime maximum benefit of up to five (5) times the amount of Your original **Maximum Daily Benefit** for the costs of training the **Family Member.**

To obtain pre-approval, You simply have to call Our Claims Department at (800) 362-0700 to notify Us that a **Family Member** will be providing care/assistance and will need training to do so. We will then ask for information pertaining to Your needs, the **Family Member** and the type of care/assistance to be provided by the **Family Member.**

# MEALS ON WHEELS BENEFITS

When You require care/assistance covered by this Policy, We will pay the charge incurred for **Meals on Wheels** to be delivered to Your **Home**, subject to a maximum of $25.00 per day. This benefit is available for a maximum of thirty (30) days per calendar year. Any days not utilized cannot be carried over to any subsequent years. (Once this thirty (30) days in benefits has been exhausted, additional benefits for **Meals on Wheels** can be considered under this Policy's **Alternative Plan of Care Benefits.** Please refer to page 18 for the **Alternative Plan of Care Benefits.**)

*Meals on Wheels* is a community-based service administered by the local Agency for the Aging which provides hot meals to Your **Home.**

In order to be eligible for this benefit, You must satisfy the **Conditions of Eligibility** listed on Page 14 and You must obtain pre-approval from Us. To obtain pre-approval, You simply have to call Us at (800) 362-0700.

# BED RESERVATION BENEFITS

We will pay a *Bed Reservation Benefit* when You are charged to hold Your room in an **Assisted Living Facility** or **Nursing Facility** when hospitalized during the course of an **Assisted Living Facility** or **Nursing Facility** confinement. The amount payable per day under the **Bed Reservation Benefit** shall be equal to the **Assisted Living Facility Benefit** or **Nursing Facility Benefit** payable on the day prior to the hospitalization. This benefit will be limited to thirty (30) days per calendar year on a combined basis. Any days not used in a Calendar Year cannot be carried over to any subsequent years.

# ALTERNATIVE PLAN OF CARE

If You would otherwise qualify for benefits for a confinement to an **Assisted Living Facility** or **Nursing Facility**, You may request that We consider providing benefits for an alternative to such a confinement. A written request must be submitted in advance and describe, in detail, the proposed alternative, as well as the costs of said alternative. The **Alternative Plan of Care** must be a medically acceptable option and be agreed on in advance by You, Your **Physician** and Us. We will review the proposed **Alternative Plan of Care** and, if it is acceptable, let You know specifically under what terms We will pay benefits and the amount of benefits to be paid. Approval or disapproval of the proposed alternative and the benefits to be paid shall be at Our sole discretion.

The **Alternative Plan of Care** must be in lieu of a confinement to an **Assisted Living Facility** or a **Nursing Facility**. An example of an **Alternative Plan of Care** would be to equip Your **Home** with adaptive devices, such as shower bars, a special toilet and a wheelchair ramp, which would enable You to remain at **Home**, and without which You would need to enter an **Assisted Living Facility** or **Nursing Facility**.

Benefits extended under the **Alternative Plan of Care** will be deducted from the **Maximum Lifetime Benefit** listed in the Policy Schedule and will, correspondingly, reduce the benefits available for the other forms of care/assistance covered by this Policy by an equal amount. (Please refer to Page 20 for the definition of **Maximum Lifetime Benefit**.)

# RESTORATION OF BENEFITS

We will restore the **Maximum Lifetime Benefit** of this Policy to the full original amount listed in the Policy Schedule when:
1) You have not been confined to an **Assisted Living Facility** or **Nursing Facility** and You did not receive **Homemaker Care, Personal Care, Home Health Care, Adult Day Care** or **Hospice Care** for a period of one hundred and eighty (180) consecutive days; and
2) Your **Physician** certifies that:
   a) You recovered sufficiently to not require confinement to, and You were not advised to be confined to, an **Assisted Living Facility** or **Nursing Facility**; and
   b) You recovered sufficiently to not receive, and You were not advised to receive, **Homemaker Care, Personal Care, Home Health Care, Adult Day Care** or **Hospice Care**, (whether provided by a **Family Member** or any other caregiver), during that one hundred eighty (180) day period.

There is no limit to the number of times the **Maximum Lifetime Benefit** will restore as long as You meet the above requirements.

*PF2600-2-TQ(CA)R*

# WAIVER OF PREMIUM BENEFITS

Once You have received benefits for ninety (90) continuous days for confinement to an **Assisted Living Facility** or **Nursing Facility** and/or for **Homemaker Care, Personal Care, Home Health Care, Adult Day Care** and/or **Hospice Care** received on a regular basis, (a regular basis is five (5) days or more per week). We will waive the payment of premiums for this Policy and any riders attached to this Policy while You continue to be so eligible for benefits. Premiums that have been paid for coverage that extends beyond the date You become eligible for the **Waiver of Premium Benefits** will be held by Us and applied to any premiums payable once You are no longer eligible for the **Waiver of Premium Benefits**. If You die while eligible for this benefit, the waived premiums held by Us will be refunded to Your estate.

## SECTION V: BENEFIT LIMITATIONS
### This section explains the limitations on the benefits available under this Policy

## MAXIMUM DAILY BENEFIT

The *Maximum Daily Benefit* is the maximum amount We will pay under any one (1) benefit, or combination of benefits, for care/assistance received during the same calendar day. The **Maximum Daily Benefit** is listed in the Policy Schedule.

## MAXIMUM LIFETIME BENEFIT

The *Maximum Lifetime Benefit* is the maximum amount We will pay during Your lifetime under this Policy, unless benefits are restored as described in the **Restoration of Benefits** provision on Page 18. The **Maximum Lifetime Benefit** is essentially a pool of money and it applies to all of the benefits available under this Policy on a combined basis and may be used interchangeably for **Personal Care, Home Health Care, Adult Day Care,** confinement to a **Nursing Facility,** etc. This means each dollar in benefits paid under this Policy will reduce the remaining amount available (the remaining pool of money) for all benefits by an equal amount. (For example, if Your **Maximum Lifetime Benefit** is $75,000 and We pay $10,000 in benefits for **Personal Care,** the total remaining benefits available for **Personal Care** and/or for **Home Health Care,** confinement to an **Assisted Living Facility, Hospice Care,** etc. will be limited to $65,000.) The **Maximum Lifetime Benefit** is listed in the Policy Schedule.

## HOME/COMMUNITY-BASED CARE ELIMINATION PERIOD

The *Home/Community-Based Care Elimination Period* serves as a deductible which must be satisfied before benefits will be available. Specifically, it is the number of days You must receive Homemaker Care, Personal Care, Home Health Care, Adult Day Care, Hospice Care or Respite Care before You can receive benefits. For each day of care/assistance to be applied towards the satisfaction of the **Home/Community-Based Care Elimination Period,** the care/assistance must be otherwise covered by the Policy and You must otherwise be eligible for benefits. When benefits do begin, they will not be retroactive to the beginning of the **Home/Community-Based Care Elimination Period.**

The **Home/Community-Based Care Elimination Period** and the **Facility Elimination Period** must be satisfied only once during the lifetime of this Policy and applies to all of the benefits available under this Policy on a combined basis. (For example, if You satisfy the **Home/Community-Based Care Elimination Period** and would then require admission to an **Assisted Living Facility,** it will not be necessary for You to satisfy the **Facility Elimination Period.**) The **Home/Community-Based Care Elimination Period** and the **Facility Elimination Period** are listed in the Policy Schedule.

> The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details.)

## FACILITY ELIMINATION PERIOD

The *Facility Elimination Period* serves as a deductible which must be satisfied before benefits will be available. Specifically, it is the number of days You must receive care/assistance in an **Assisted Living Facility** or in a **Nursing Facility** before You can receive benefits. For each day of care/assistance to be applied towards the satisfaction of the **Facility Elimination Period**, the care/assistance must be otherwise covered by the Policy and You must otherwise be eligible for benefits. When benefits do begin, they will not be retroactive to the beginning of the **Facility Elimination Period**.

## PRE-EXISTING CONDITIONS LIMITATION

**Pre-Existing Conditions** listed on the application are covered immediately. **Pre-Existing Conditions**, which are not listed on the application, are not covered unless the care/assistance begins six (6) months or more after the Effective Date shown in the Policy Schedule.

A *Pre-Existing Condition* is a condition for which medical advice or treatment was recommended by or received from a **Physician** within six (6) months preceding the Policy's Effective Date as shown in the Policy Schedule.

*PF2600-2-TQ(CA)R*

*PAGE 21*

## SECTION VI: ADDITIONAL FEATURES
This section explains additional Policy Features designed to protect You.

### THIRD PARTY NOTIFICATION OF LAPSE

You have the right to designate at least one (1) person who will be notified in the event Your Policy is about to lapse because the renewal premium has not been paid. This is to protect You from losing this valuable coverage in the event You become mentally incompetent or physically incapable of paying the renewal premium when due.

If You elect to designate such a person, Your Policy cannot be canceled for nonpayment of premium unless We have notified the designated person at least thirty (30) days in advance of the cancellation date. Notice shall be given by first class United States mail, postage prepaid, and will be given thirty (30) days after a premium is due and unpaid. Notice shall be deemed to have been given as of five (5) days after the date of Our mailing to the third party.

Your written designation shall include the person's full name and home address and shall become a part of Our records. We shall notify You of the right to change this written designation at least once every two (2) years. If You do not elect to designate a third party to receive notice of cancellation for nonpayment of premium, a written waiver dated and signed by You will become part of Our records. You may elect to designate a third party or change the third party previously designated, at any time, by submitting a written request to Our Home Office.

(Designation of this third party does not constitute acceptance of any liability by this person for the cost of any care/assistance You receive.)

### REINSTATEMENT FOR ALZHEIMER'S DISEASE, OTHER FORMS OF COGNITIVE IMPAIRMENT AND/OR LOSS OF FUNCTIONAL CAPACITY

If Your Policy lapses, We will provide a retroactive continuation of coverage if We receive the following within five (5) months of the date it lapses:

1) Satisfactory proof You had **Cognitive Impairment** (including, but not limited to Alzheimer's Disease) and/or a loss of functional capacity (the inability to perform two (2) or more of the **Activities of Daily Living**); and
2) Payment of all past-due premiums for this Policy and any riders attached to this Policy that were in force on the date of lapse.
   (Please refer to Page 14 for the definition of **Activities of Daily Living** and Page 15 for the definition of **Cognitive Impairment**.)

This reinstatement will provide uninterrupted coverage to the same extent that the Policy would have provided had it not lapsed.

## OUR PROMISE – Your Right To Convert To A Non-Tax-Qualified Policy

In the event the U.S. Congress or the Treasury Department rules the premiums and/or benefits of a non-tax-qualified policy will receive preferential treatment, as is the case with this Policy, You may convert this Policy to a non-tax-qualified Policy at any time prior to its first anniversary. All You have to do is submit a written request to Our Home Office. The premiums of the new Policy will be based on Your original issue age and You will not have to submit additional evidence of insurability for any benefit amounts not exceeding those elected with the original Policy. (The premiums for the non-tax-qualified Policy may be higher because of the additional coverage it provides.) You may also convert this Policy to a non-tax-qualified policy _after_ its first anniversary if You provide evidence of insurability acceptable to Us. The premiums of the new policy will be based on Your original issue age.

## EXTENSION OF BENEFITS

If this Policy terminates while You are eligible for benefits, benefits shall continue to be payable provided the care/assistance continues without interruption and is otherwise covered by the Policy. The extension of benefits beyond the date the Policy is terminated is limited to the benefits remaining in the **Maximum Lifetime Benefit.** (Benefits may be reduced by the amount of premium payable for the duration of the **Maximum Lifetime Benefit** in accordance with the Unpaid Premium provision, which can be found on Page 28.)

## SECTION VII EXCLUSIONS
This section explains the circumstances under which benefits will not be payable even if You have satisfied all of the other terms of the Policy.

Exclusions: The Policy will not pay benefits for:

1) Care/assistance provided while this Policy is not in force.
2) Care/assistance provided by a **Family Member**, unless pre-approved by Us, or in a facility owned or operated by a **Family Member**.
3) Care/assistance that You would not be legally obligated to pay for in the absence of this insurance.
4) Care/assistance provided outside of the United States or its possessions.
5) Care/assistance payable under any Worker's Compensation or Occupational Disease Law.
6) Care/assistance for mental, nervous or emotional disorders without demonstrable organic origin. **(NOTE: ALZHEIMER'S DISEASE AND OTHER ORGANIC BRAIN SYNDROMES ARE COVERED BY THE POLICY AS ANY OTHER SICKNESS).**
7) Care/assistance required as a result of war, or an act of war, whether declared or not.
8) Care/assistance required as a result of attempted suicide or intentionally self-inflicted injuries.
9) Care/assistance required as a result of Your being intoxicated or under the influence of a non-**Physician** prescribed narcotic.
10) Care/assistance required as a result of alcoholism and/or drug abuse.
11) Care/assistance required as a result of Your commission of a felony or Your being engaged in an illegal occupation.
12) Care/assistance paid for by Medicare. Any portion of the charges not paid by Medicare, will be covered, subject to the terms of this Policy.
13) Care/assistance required as a result of cosmetic surgery.

"Care/assistance" refers to **Homemaker Care, Personal Care, Home Health Care, Adult Day Care, Hospice Care, Respite Care** and confinement in an **Assisted Living Facility** and/or **Nursing Facility.**

# SECTION VIII: GENERAL CONTRACT PROVISIONS
Your Long Term Care Insurance Policy is a contract between You and Us. This section explains the general contract provisions that govern this Policy.

**Consideration:** We agree to insure You for the benefits stated in this Policy in consideration of the application received and the payment of the premium, subject to all of the terms, definitions, provisions, limitations and exclusions contained herein:

If You die while insured under the Policy, We will refund the part of any premium paid for coverage that extends beyond the date of Your death. The refund will be made within thirty (30) days of Your receipt of written notice of Your death. It will be paid to Your estate.

**Cancellation:** We cannot cancel this Policy at any time. Once this Policy's thirty (30) day examination period has expired, You may only cancel this Policy on its renewal date. To cancel this Policy You must submit a written request to Our Home Office. If You request We cancel this Policy, the termination of this Policy will take effect on the first renewal date following Our receipt of Your request.

**Effective Date:** Evidence of insurability is required before coverage is provided. Upon approval of Your application, coverage will begin at 12:01 AM, standard time, at Your residence on the Effective Date shown in the Policy Schedule. It ends at 12:01 AM, standard time, on the first renewal date.

**Eligibility For New Benefits:** If We develop new benefits of benefit eligibility not included in this Policy, We will grant You the following rights, provided You have satisfied the **Home/Community-Based Care Elimination Period** and the **Facility Elimination Period**, and You are not currently receiving benefits:
1) You will be notified of the availability of the new benefits or benefit eligibility within twelve (12) months.
2) We shall offer You new benefits or benefit eligibility by replacing this Policy with a new policy. The premiums of the new policy will be based on your original issue age.

**Entire Contract; Changes:** This Policy, including any attached papers, constitutes the entire contract. No change is valid until approved by one of Our executive officers and endorsed hereon or attached hereto. No agent has authority to change this Policy or to waive any of its provisions.

**Grace Period:** A grace period of thirty-one (31) days is granted for the payment of each premium due after the first premium, during which time Your Policy continues in force. If the renewal premium is not paid before the Grace Period ends, Your Policy will lapse. (If You have elected a Third Party to receive notice of Your Policy lapsing, it will lapse thirty (30) days after such notice has been provided.)

## CLAIMS UNDER THIS POLICY:

**What You Should Do When You Have A Home Care or Community-Based Care Claim:**

When You need **Homemaker Care, Personal Care, Home Health Care, Adult Day Care, Hospice Care** or **Respite Care** that may be covered by this Policy, You should immediately call Our Claims Department at (800) 362-0700 if You would like to be eligible for the waiver of the Policy's **Home/Community-Based Care Elimination Period.** Please refer to the **Early Notification of Claim** provision on Page 11.

When You call Us, We will give You further instructions on what forms/information You need to submit. If You elect not to notify Us of Your claim within fifteen (15) calendar days of the care/assistance beginning in accordance with the **Early Notification of Claim** provision, the Claim Forms You will need to complete are enclosed. Please follow the instructions on these forms as they will tell You precisely what You have to do. Following these instructions and submitting the information required will help Us expedite the processing of Your claim. If You have any questions, or if You need additional Claim Forms, please call Us at (800) 362-0700.

**What You Should Do When You Have a Facility Claim:**

When You need to enter an **Assisted Living Facility** or **Nursing Facility,** the Claim Forms You will need to complete are enclosed. Please follow the instructions on these forms as they will tell You precisely what You have to do. Following these instructions and submitting the information required will help Us expedite the processing of Your claim. If You have any questions, or if You need additional Claim Forms, please call Us at (800) 362-0700.

**Reinstatement:** If Your Policy lapses, We can consider reinstating it if We receive the renewal premium and a reinstatement application within six (6) months of the date the premium was due. If We approve Your reinstatement application, Your Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within forty-five (45) days of receiving the application, otherwise, Your Policy will be reinstated forty-five (45) days after the date of Our receiving the reinstatement application.

The reinstated Policy will cover only loss resulting from accidental injury as may occur after the date of reinstatement and loss due to sickness as may begin more than ten (10) days after the date of reinstatement. In all other respects, both Your and Our rights under the Policy will be the same as before the Policy lapsed. Any premiums We accept for a reinstatement will be applied to the period for which premiums have not been paid. No premium will be applied to any period more than sixty (60) days before the date of reinstatement.

**Conformity with State Statutes:** Any provision of the Policy, which, on its Effective Date, conflicts with the statutes of Your state on such date, is amended to conform to its minimum requirements.

**Right to Change Coverage:** You may, on or after this Policy's first anniversary, reduce the coverage offered by this Policy and, correspondingly, the premium required to keep this Policy in force, by:

1) Reducing the **Maximum Daily Benefit;** or
2) Reducing the **Maximum Lifetime Benefit,** (provided You do not already have the minimum amount available in force); or
3) Converting this Policy to a Nursing Home Only Policy or a Home Health Care Only Policy, if such a policy is available through Our company at the time such a change is elected.

You may make any of these changes without submitting any evidence of insurability and we will use Your age on the original Effective Date to calculate the new premiums. To make such a change, please submit a written request to Our Home Office. We will make the requested change(s) and advise You of the new premium payable. (Please refer to Page 20 for the definitions of **Maximum Daily Benefit** and **Maximum Lifetime Benefit.**)

You may also request to increase Your coverage at any time by contacting Your agent or Our Home Office. Evidence of insurability will be required before any such change can be considered and Your current age will be used to calculate the cost of any coverage added to Your Policy.

**Claim Forms/Proof of Loss:** You must submit the required claim forms or other written proof of loss within ninety (90) days of the occurrence of the loss. If You have a good reason for not doing so, We will not contest the claim. However, You must give Us proof no later than one (1) year from the time normally required unless legally incapable. As sufficient proof of loss, We may request full documentation, such as proof of the actual expenses incurred.

**Payment of Claims:** All benefits will be payable to You, unless You, or someone legally authorized to act in Your behalf, assigns these benefits by providing Us written instructions to pay another party. Any accrued benefits unpaid at Your death will be paid to Your estate, unless said benefits were so assigned to another party.

**Time of Payment of Claims:** Benefits payable under the Policy for any loss incurred will be paid within thirty (30) days after receipt of written proof of loss. Any balance remaining unpaid at the end of Our liability will be paid immediately upon receipt of written proof of loss.

**Claims Involving Other Policies:** Should benefits for care/services covered by this Policy also be available through other coverage, benefits shall be paid in accordance with the age of each respective policy/plan, with the policy/plan having the earliest effective date being the first to provide benefits. After all benefits available under the oldest policy/plan have been paid, any remaining eligible charge(s) shall then be considered under the policy/plan with the second oldest effective date. After benefits have been paid under the second policy/plan, any remaining charge(s) will then be considered under the third oldest policy/plan, and so on, until You have been reimbursed in full for the charge(s) in question. All such charges remain subject to the other terms and conditions of this Policy. (Benefits will not be paid under this Policy to the extent that they would serve to reimburse You, when combined with the benefits paid through any and all other polices/plans, for more than the actual expense incurred.)

**Physical Assessment:** At Our expense, We shall have the right and opportunity to have You examined and/or obtain an independent assessment of Your functional and/or cognitive abilities when and as often as We may reasonably require while a claim is pending.

**Appealing a Denial of Benefits:** You, or someone authorized to act in Your behalf, shall have the right to appeal any denial of a claim, or portion of a claim, made under this Policy. Such appeal

*PF2600-2-TQ(CA)R*                                                            *PAGE 27*

should be submitted in writing and should explain the basis for your disagreement with Our decision. The appeal should also include any information and/or documentation which supports Your position. We will send You a written explanation of the results of Our review within thirty (30) days of Our receiving Your appeal, or within thirty (30) days of Our receiving any additional information needed to adequately review Your appeal.

**Contestability/Time Limit on Certain Defenses:**  No claim for care/assistance which begins after six (6) months from the Effective Date of coverage will be reduced or denied because a physical condition had existed before the Effective Date of coverage, (refer to the Pre-Existing Conditions Limitation on Page 20), unless this Policy is voided due to a material misstatement made in the application.   After two (2) years from the Effective Date of coverage, no misstatements, except fraudulent ones, made in the application may be used to void this Policy.

**Legal Actions:**  No legal action may be brought to recover on the Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action shall be brought after the expiration of the applicable statute of limitations from the time written proof of loss is required to be given.

**Misstatement of Age:**  If Your age has been misstated at the time You applied for this Policy, all amounts payable shall be such as the premium paid would have purchased given the correct age.

**Unpaid Premium:**  When a claim is paid, any premium due and unpaid may be deducted from the claim payment.

**IN WITNESS WHEREOF,** We have caused this Policy to be signed by Our President and Secretary.

President

Secretary

PENN TREATY NETWORK AMERICA INSURANCE COMPANY
3440 Lehigh Street
P.O. Box 7066
Allentown, PA 18105-7066

## AMENDMENT OF APPLICATION / POLICY

I,  GLORIA L MCCARROLL                          hereby amend my application/policy to

PENN TREATY NETWORK AMERICA INSURANCE COMPANY,

dated   AUG 06  ,  2001  as follows:

MAXIMUM LIFETIME BENEFIT - $150,000
THE NEW ANNUAL PREMIUM SHALL NOW BE - $4015.44

PENN TREATY
NETWORK AMERICA

AUG 1 6 2001

NEW BUSINESS

I hereby agree that these changes are an amendment to and form a part of the application and/or policy referenced above.  These changes are binding on any person who shall have or claim any interest under such policy.

Dated at  _SAN JOSE, CA_       this _10_ day of _AUGUST_      20 _01_

Witness _Daniel D. Soto_       Signed _Gloria M. Carroll_
                                                     Proposed Insured

Policy No.  N772186

Return Signed to the Policy Issue Department
You may also fax the signed amendment to us at 484-232-6369

Form                                                                    N-UN-145

N 772186    **Penn Treaty Network America Life Insurance Company**
**3440 Lehigh Street, Allentown, PA 18103**

This contract for Long Term Care Insurance is intended to be a federally qualified Long Term Care insurance contract and may qualify you for federal and state tax benefits.

## I. AGENT INFORMATION:
Agent Name _DANIEL GROTA_    Agent Number _25846_    Date _6/11/01_

## APPLICANT INFORMATION:
Name _GLORIA_ (First)    _L._ (Middle)    _MAC ARROLL_ (Last)

Mailing Address _1091 MELBOURNE BLVD. SAN JOSE, 95116_
(Street)    (City)    (State)    (Zip)

Billing Address (complete only if different from Mailing Address)

(Street)    (City)    (State)    (Zip)

How long at current address _47 YEARS_

Telephone _(408) 294-2192_    E-Mail

Soc. Sec. No. _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_    Birth Date _12/15/1932_

Sex  ☒ Female  ☐ Male    Height _5'4_    Weight _194_    Age _68_    Marital Status  ☐ Single  ☒ Married  ☐ Widow(er)

## II. YOUR LONG TERM CARE STRATEGY:

☒ Personal Freedom℠-TQ    Form No. _____
☐ Assisted Living Plus℠-TQ
☐ Independent Living®-TQ
☐ Secured Risk℠-TQ
☐ Other _____

Maximum Daily Benefit    $ _100.00_
Max. Lifetime Benefit/Benefit Period    _350,000._
Elimination Period    _100_ days

**ALTERNATIVE PAYMENT OPTIONS:**
☐ One  ☐ Two  ☐ Five  ☐ Ten
☐ Up to 65  ☒ Pay as you go

**PREMIUM MODE:**
☐ Annual  ☐ Semi-Annual  ☐ Quarterly
☐ Monthly  ☐ ACH (When selecting ACH, two (2) months premium & a copy of a voided check is needed.)

**OPTIONAL RIDERS:**    Form No.
☐ Christian Science Facility Rider
☐ Compound Inflation Rider
☐ Nonforfeiture Premium
   Benefit Rider
☐ Other _____

Maximum Daily Benefit    $ _____
Max. Lifetime Benefit    _____

**UNDERWRITING CLASS:**
☐ Preferred  ☐ Premier  ☒ Select
☐ Standard  ☐ Other _____

PENN TREATY
NETWORK AMERICA
JUN 22 200
NEW BUSINESS

**PREMIUM CALCULATION:**
Annual Premium    $ _2981.44_
Application Fee    $ _25.00_
Marital Discount (deduct 10%)
Premium Submitted    $ _293.33_

Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information may be guilty of a felony of the third degree, (as determined by a court of competent jurisdiction).

PAGE 1 OF 4

PTA-APP-TQ(CA)

## III.  Medical Information

Applicant's Name (necessary only if application is faxed)

1. Do you need or receive assistance or supervision in performing everyday living activities such as walking, bathing, dressing, eating, transferring or toileting? .................... Yes ☐ No ☒

2. Are you currently confined to a hospital, Long Term Care facility or are you receiving any type of care or assistance in your home ? ................................................... Yes ☐ No ☒

3. Have you ever been diagnosed with or treated for Alzheimer's Disease, Dementia, Senility or any other type of Organic Brain Syndrome? ........................................... Yes ☐ No ☒

4. Have you ever been diagnosed with or treated for Acquired Immune Deficiency Syndrome (AIDS), or Aids Related Complex (ARC), or tested positive for the Human Immunodeficiency Virus (HIV)? ...................................................................... Yes ☐ No ☒

> **NOTE:  If any of the above questions are answered "Yes", the applicant is NOT ELIGIBLE for coverage and the application should not be submitted.**

5. Within the past five (5) years:
   a) have you been hospitalized or been advised to be hospitalized? ................................ Yes ☒ No ☐
   b) have you had any surgical procedures performed or been advised to undergo surgery? Yes ☒ No ☐
   c) have you been confined to a nursing home or assisted living facility or been advised to be confined to a nursing home or assisted living facility? .......................................... Yes ☐ No ☒
   d) have you received care in your home or been advised to receive care in your home? . Yes ☐ No ☒

6. Within the past two (2) years, have you received assistance with shopping, cleaning, cooking, laundry or transportation? ................................................................. Yes ☒ No ☐

7. Within the past two (2) years, have you used a cane, walker or wheelchair? .................... Yes ☒ No ☐

8. Have you ever had an application for life or health insurance (including Long Term Care insurance) declined, rated, modified or postponed? .............................................. Yes ☐ No ☒

9. Have you ever received disability benefits of any type? .......................................... Yes ☐ No ☒

10. Are you currently covered by a Power-of-Attorney (POA) agreement? ........................ Yes ☐ No ☒

11. Within the past five (5) years, have you smoked or used any tobacco products ? ............ Yes ☐ No ☒

12. Within the past five (5) years, have you sought and/or received any medical or surgical advice, examination or treatment for:
    a) Cancer, Leukemia or Hodgkin's Disease? ............................................. Yes ☐ No ☒
    b) Stroke or TIA (Trans-Ischemic Attack)? ................................................ Yes ☐ No ☒
    c) Epilepsy or Seizures? ...................................................................... Yes ☐ No ☒
    d) Parkinson's Disease or any other Central Nervous System Disease or Disorder? ..... Yes ☐ No ☒
    e) Memory Loss, Forgetfulness or Confusion? ......................................... Yes ☐ No ☒
    f) Depression, Psychosis or any other Mental, Nervous, Emotional or Brain Disorder? .. Yes ☐ No ☒
    g) Nephritis, Kidney Failure or Incontinence? ........................................... Yes ☐ No ☒
    h) Cirrhosis of the Liver? ..................................................................... Yes ☐ No ☒
    i) Diabetes? ..................................................................................... Yes ☒ No ☐
    j) Osteoporosis, Arthritis or any other Bone, Joint or Muscle Disease or Disorder? ... Yes ☒ No ☐
    k) Heart Disease or Disorder? ................................................................ Yes ☐ No ☒
    l) Hypertension or any other Circulatory Disorder? .................................... Yes ☐ No ☒
    m) Cystic Fibrosis, Emphysema or any other Lung Disease? ........................... Yes ☐ No ☒
    n) Drug or Alcohol Abuse? ................................................................... Yes ☐ No ☒

13. Within the past five (5) years, have you sought and/or received any medical or surgical advice, examination, or treatment for any health condition or symptoms not included in the above medical/health questions? ................................................................. Yes ☐ No ☒

---

If any question is answered "Yes", please list the complete name(s) and address(es) of all physicians consulted.

James Cohen
15400 National Ave
Rm 201.
Los Gatos - CA. 95032

(408) 358-2444

If more space is needed, attach a sheet signed by the applicant and check this box. ☐ (check only if additional sheet is submitted)

**PAGE 2 OF 4**

## IV.     Medications

Applicant's Name (necessary only if application is faxed)

Please list all medications currently being taken.

| Medication | Condition | Dosage | Medication | Condition | Dosage |
|---|---|---|---|---|---|
| COUMARIN | BLOOD | 5mg | | | |
| DIOLETERAC | Arth on ng | 7 | | | |
| KOTENCL | Blood Pressure | 100 | | | |
| GLYBRUIDE | DIABETIG | 5 | | | |

If more space is needed, attach a sheet signed by the applicant and check this box. ☐ (check only if additional sheet is submitted)

## V.     Family Physician

Physician's Name: JAMES COHEN     Telephone: (408) 35P-8444

Address: 1540 NATIONAL AVE #201  Los Gatos, CA. 95032

## VI.     Additional Information

1. Do you now, or did you within the last twelve (12) months, have another Long Term Care, Nursing Home and/or Home Health Care insurance policy or certificate (including health service contract or health maintenance organization contract) in force? ..   Yes ☐  No ☒
   a) If "Yes", with what company? _____
   b) If the policy or certificate has lapsed, when did it lapse? .........................   Yes ☐  No ☒   __/__/__
2. Do you intend to replace any of your medical or health insurance with this policy? ............   Yes ☐  No ☒
   If "Yes", a completed Replacement Form MUST be submitted with the Application.
3. Are you covered by Medicaid? (If you are eligible for or covered by Medicaid, you should reconsider your decision to purchase a policy as it may not be financially suitable) ...........   Yes ☐  No ☒
4. Agent to list all policies he or she has sold to the applicant in the last five (5) years. (Use additional signed sheet if necessary.)

| Company | Policy/Certificate Number | Type of Coverage | Effective Date of Coverage | Currently in Force? | If Lapsed, Give Date |
|---|---|---|---|---|---|
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |

## VII.     Inflation Protection

I have received the Outline of Coverage and the graphs that compare the benefits and premiums of this policy with and without inflation protection. Specifically, I have reviewed the Lifetime Inflation Rider information and I:
   ☐ accept Compound Inflation Protection.     ☒ reject Compound Inflation Protection.

## VIII.     Nonforfeiture Protection

I have reviewed the Outline of Coverage and the explanation of the Nonforfeiture Option. I realize that the rider provides me with the right to maintain a portion of my maximum lifetime benefits / benefit period in the event the policy lapses after having been continuously in force for at least three (3) years. Specifically, I have reviewed the Nonforfeiture Rider and I:
   ☐ accept Nonforfeiture Protection.     ☒ reject Nonforfeiture Protection.

**PAGE 3 OF 4**

Applicant's Name (necessary only if application is faxed)

## IX.   Third Party Designation - Protection Against Unintended Lapse

I understand that I have the right to designate at least one (1) person other than myself to receive notice of the cancellation of this Long Term Care insurance policy for nonpayment of premium. I understand that notice to my designee will not be given until thirty (30) days after a premium is due and unpaid.

☒  I elect to designate this person to receive such notice:

Name: *DoLoRes   WaLeCHoN*
Address: *1P   SurryvaLE,   Sar  CARLUS   Ch.   94070*

Telephone: *(650 - 591 - 6657*

☐  I elect not to designate any person to receive such notice at this time.

## X.   Acknowledgments/Release of Medical Information

*I hereby declare* that all statements, answers and elections as recorded herein are full, complete and true. It is understood and agreed that: a copy of this application shall be attached to and form a part of any policy issued; no insurance hereby applied for shall take effect unless a policy has been delivered to me and the initial term premium is paid in full; and, if issued, coverage will begin in force as of the effective date shown in the policy schedule. I hereby affirm that I, have read, or had read to me, the completed application. I realize that any missing and/or inaccurate information or fraudulent statement in the application may result in loss of coverage under the policy, subject to its Time Limit on Certain Defenses. I realize no agent shall have the right or authority to make, alter, modify or discharge any contract or policy issued on the basis of this application.

*I hereby authorize* any licensed physician, medical practitioner, medically-related facility or insurance company that has any records of my health to give Penn Treaty Network America Life Insurance Company such information in the event that Penn Treaty Network America Life Insurance Company finds it necessary in order to evaluate my application for insurance. A photocopy of this authorization shall be as valid as the original. This authorization shall be valid for six (6) months and I understand that I, or my authorized representative may obtain a copy of this authorization at my request.

*I have read* the Outline of Coverage for the policy applied for. If I am age 65 or older, I have also received the "Guide to Health Insurance for People with Medicare" and the required Medicare Disclosure Statement, if applicable.

CAUTION: IF YOUR ANSWERS ON THIS APPLICATION ARE INCORRECT OR UNTRUE, PENN TREATY NETWORK AMERICA LIFE INSURANCE COMPANY MAY HAVE THE RIGHT TO DENY BENEFITS OR RESCIND YOUR POLICY.

Dated: *6 | 11 | 04*   at   *Ch.*   *Alicia Mc Carroll*
                                  State Signed              Signature of Applicant

## XI.   Agent's Report (must be completed and signed)

1. Did you personally interview the applicant and witness his/her signature? ☒ Yes ☐ No
2. Was anyone else present? ☐ Yes ☒ No   If yes, who? _____
3. Did you observe any physical or mental impairments with regard to memory, walking or speaking, or any form of tremor? ☐ Yes ☒ No   If yes, explain. _____
4. Does the applicant live alone? ☒ Yes ☐ No   If no, with whom does the applicant reside? _____
5. If there is a spouse, is he/she applying? ☐ Yes ☒ No
6. If the spouse is not applying, please explain the reason(s). *Does   Not   Qualify  in  N. Home*
7. Type of Dwelling:   ☒ Private Home   ☐ Apartment   ☐ Mobile Home   ☐ Retirement Home
                        ☐ Nursing Facility   ☐ Adult Congregate Living Facility   ☐ Other _____
8. Did you review the current accident and health insurance coverage of the applicant and find that additional coverage of the type and amount applied for is appropriate for the applicant's needs? ☒ Yes ☐ No

I verify that this application has been read by, or read to, the above named applicant and I have truly and accurately recorded on this application the information supplied by the applicant.

*Daniel O. Hiot*          *6 | 11 | 04*        *0572232*
Signature of Licensed Resident Agent          Date          State License I.D. No.

PAGE 4 OF 4

LAW OFFICES

# FLYNN, ROSE AND PERKINS

A PROFESSIONAL ASSOCIATION
59 N. Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
(408) 399-4566

GARY ROSE
CHARLES B. PERKINS

Facsimile: (408) 399-6683

GARY FLYNN
(Retired)

HEATHER E. GIBSON

July 16, 2007

## SENT VIA FAX & U.S. MAIL
(610) 965-6962

Penn Treaty Network
America Insurance Company
Post Office Box 7066
Allentown, Pennsylvania 18105-7066

Attn:  Claims Department

Re:    Your Insured/My Client:        Gloria McCarroll
       Policy No.:                    N772186

Dear Sir or Madam:

Mrs. McCarroll has consulted me regarding the long outstanding claim for facility and home healthcare she received from October 17, 2006 through November 13, 2006.

I asked for the information Penn Treaty still needed to complete the evaluation of her claim, but Mrs. McCarroll could find nothing in writing regarding the current status of her claim. The *California Fair Claim Practices Regulations,* *§10 CAC 2695.1, et seq.,* in particular, *§2695.7,* require that an insured receive a status, with information regarding unresolved issues, every 30 days after an initial pending period of 40 calendar days.  I see nothing in my file that reflects compliance by Penn Treaty with this requirement.

Additionally, it is an unfair practice to seek information not reasonably required for, or material to, the resolution of a claim or dispute, and it is also an unfair practice to fail to respond to telephone and written inquiries from an insured, to fail to adopt and implement reasonable standards for the prompt investigation and the processing of claims, to fail to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been satisfied, and to seek multiple copies of documentation.

I enclose copies of Medicare Summary Notices indicating that Mrs. McCarroll satisfied her 100-day elimination period through care received at The Terraces of



EXHIBIT
2

Penn Treaty Network
July 16, 2007
Page 2

Los Gatos, and the Plum Tree Care Center. Thus, her eligibility for benefits appears to have vested as of October 17, 2006, and continued to through the end of her home health care.

Mrs. McCarroll suffers from multiple, serious medical conditions that were literally life-threatening in nature and included a laminectomy from L2 through L4 and discectomy at L2-3 and L3-4. She also had severe and difficult to control infections, and multiple other complications, including congestive heart failure and diabetes. She received care in two facilities that clearly qualified for coverage. Penn Treaty has also been provided with a letter from Dr. Thomas confirming the need for home health care, which appears to satisfy *Insurance Code §10233*.

Please immediately advise me of all additional information <u>reasonably</u> required to evaluate Mrs. McCarroll's eligibility for benefits.

Sincerely yours,

GARY S. ROSE

GSR/ds
cc:   Mrs. Gloria McCarroll

P.S.   I have included only the first page of each Medicare Summary Notice with this letter. If you wish additional information from these various Notices, please so advise me.



## CMS Medicare Summary Notice

December 01, 2006

---

**CUSTOMER SERVICE INFORMATION**

Your Medicare Number: 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A

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

Call: 1-800-MEDICARE (1-800-633-4227)
Ask For Hospital Services
TDD-Telecommunication Device
For The Deaf: 1-877-486-2048

---

GLORIA MCCARROLL
1091 MELBOURNE BLVD
SAN JOSE CA 95116-3265

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 11/20/2006.

## PART A HOSPITAL INSURANCE - INPATIENT CLAIMS

| Dates of Service | | Benefit Days Used | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20632113532B04 | 04 | | | | | a,b,c |
| American Baptist Homes Of West | | | | | | |
| The Terraces Of Los Gatos | | | | | | |
| 800 Blossom Hill Rd | | | | | | |
| Los Gatos, CA 95032 | | | | | | |
| Referred by: Ernest Thomas | | | | | | |
| 10/01/06-10/16/06 | | 16 days | $0.00 | $1,904.00 | $1,904.00 | d |

**Notes Section:**

a  You have used all of your benefit days for this period.

b  The amount Medicare paid the provider for this claim is $7,465.12.

(continued)

---

**THIS IS NOT A BILL - Keep this notice for your records.**



Page 01 of 01

# CMS / Medicare Summary Notice

November 01, 2006

**CUSTOMER SERVICE INFORMATION**

Your Medicare Number:  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A

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

Call: 1-800-MEDICARE (1-800-633-4227)
Ask For Hospital Services
TDD-Telecommunication Device
For The Deaf: 1-877-486-2048

GLORIA MCCARROLL
1091 MELBOURNE BLVD
SAN JOSE CA 95116-3265

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 10/20/2006.

## PART A HOSPITAL INSURANCE - INPATIENT CLAIMS

| Dates of Service | | Benefit Days Used | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20629216000604 | 04 | | | | | a,b,c |
| American Baptist Homes Of West | | | | | | |
| The Terraces Of Los Gatos | | | | | | |
| 800 Blossom Hill Rd | | | | | | |
| Los Gatos, CA 95032 | | | | | | |
| Referred by: Ernest Thomas | | 16 days | $0.00 | $1,904.00 | $1,904.00 | d |
| 09/15/06-09/30/06 | | | | | | |

**Notes Section:**

a  You have 16 day(s) remaining of your total 100 days of skilled nursing facility benefits for this benefit period.

b  The amount Medicare paid the provider for this claim is $6,963.84.

(continued)

**THIS IS NOT A BILL - Keep this notice for your records.**

**CMS** **Medicare Summary Notice**
Page 01 of 03

November 01, 2006

**CUSTOMER SERVICE INFORMATION**

Your Medicare Number: 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A

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

Call: 1-800-MEDICARE (1-800-633-4227)
Ask For Hospital Services
TDD-Telecommunication Device
For The Deaf: 1-877-486-2048

GLORIA MCCARROLL
1091 MELBOURNE BLVD
SAN JOSE CA 95116-3265

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 10/20/2006.

## PART A HOSPITAL INSURANCE - INPATIENT CLAIMS

| Dates of Service | | Benefit Days Used | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20629215533704 | 04 | | | | | a,b,c |
| American Baptist Homes Of West | | | | | | |
| The Terraces Of Los Gatos | | | | | | |
| 800 Blossom Hill Rd | | | | | | |
| Los Gatos, CA 95032 | | | | | | |
| Referred by: Ernest Thomas | | | | | | |
| 09/06/06-09/08/06 | | 2 days | $0.00 | $238.00 | $238.00 | d |

**Notes Section:**

a  You have 32 day(s) remaining of your total 100 days of skilled nursing facility benefits for this benefit period.

b  The amount Medicare paid the provider for this claim is $820.04.

(continued)

**THIS IS NOT A BILL - Keep this notice for your records.**



Page 01 of 03

# Medicare Summary Notice
### CMS/

**CUSTOMER SERVICE INFORMATION**

Your Medicare Number: 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A

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

Call: 1-800-MEDICARE (1-800-633-4227)
Ask For Hospital Services
TDD-Telecommunication Device
For The Deaf: 1-877-486-2048

GLORIA MCCARROLL
1091 MELBOURNE BLVD
SAN JOSE CA 95116-3265

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

## This is a summary of claims processed on 09/08/2006.

### PART A HOSPITAL INSURANCE - INPATIENT CLAIMS

| Dates of Service | | Benefit Days Used | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20624905436502 | 04 | | | | | a,b,c |
| Ghc Of Los Gatos Llc | | | | | | |
| Plum Tree Care Center | | | | | | |
| 2580 Samaritan Dr | | | | | | |
| Los Gatos, CA 95124 | | | | | | |
| Referred by: J Smith | | 29 days | $0.00 | $3,451.00 | $3,451.00 | d |
| 08/01/06-08/30/06 | | | | | | |

**Notes Section:**

a You have 34 day(s) remaining of your total 100 days of skilled nursing facility benefits for this benefit period.

b The amount Medicare paid the provider for this claim is $12,864.94.

(continued)

## THIS IS NOT A BILL - Keep this notice for your records.

Page 01 of 03

## CMS / Medicare Summary Notice

September 01, 2006

**CUSTOMER SERVICE INFORMATION**

Your Medicare Number: **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A**

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

Call: **1-800-MEDICARE (1-800-633-4227)**

Ask For Hospital Services
TDD-Telecommunication Device
For The Deaf: **1-877-486-2048**

GLORIA MCCARROLL
1091 MELBOURNE BLVD
SAN JOSE CA 95116-3265

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 08/08/2006.

## PART A HOSPITAL INSURANCE - INPATIENT CLAIMS

| Dates of Service | | Benefit Days Used | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20621601828902 | 04 | | | | | a,b,c |
| Ghc Of Los Gatos Llc | | | | | | |
| Plum Tree Care Center | | | | | | |
| 2580 Samaritan Dr | | | | | | |
| Los Gatos, CA 95124 | | | | | | |
| Referred by: J Smith | | 31 days | $0.00 | $2,023.00 | $2,023.00 | d |
| 07/01/06-07/31/06 | | | | | | |

**Notes Section:**

a  You have 63 day(s) remaining of your total 100 days of skilled nursing facility benefits for this benefit period.

b  The amount Medicare paid the provider for this claim is $15,856.56.

(continued)

**THIS IS NOT A BILL - Keep this notice for your records.**



Page 01 of 02

August 01, 2006

**CUSTOMER SERVICE INFORMATION**

Your Medicare Number: 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A

If you have questions, write or call:
MUTUAL OF OMAHA (#52280)
MEDICARE DIVISION
P.O. BOX 1602
OMAHA, NE 68101

Call: 1-800-MEDICARE (1-800-633-4227)
Ask For Hospital Services
TDD-Telecommunication Device
For The Deaf: 1-877-486-2048

GLORIA MCCARROLL
1091 MELBOURNE BLVD
SAN JOSE CA 95116-3265

**BE INFORMED:** Always review your Medicare Summary Notice for correct information about the items or services you received.

This is a summary of claims processed on 07/11/2006.

## PART A HOSPITAL INSURANCE - INPATIENT CLAIMS

| Dates of Service | | Benefit Days Used | Non-Covered Charges | Deductible and Coinsurance | You May Be Billed | See Notes Section |
|---|---|---|---|---|---|---|
| Control number 20618803397802 | 04 | | | | | a,b |
| Ghc Of Los Gatos Llc | | | | | | |
| Plum Tree Care Center | | | | | | |
| 2580 Samaritan Dr | | | | | | |
| Los Gatos, CA 95124 | | | | | | |
| Referred by: J Smith | | 6 days | $0.00 | $0.00 | $0.00 | |
| 06/25/06-06/30/06 | | | | | | |

**Notes Section:**

a  You have 94 day(s) remaining of your total 100 days of skilled nursing facility benefits for this benefit period.

b  The amount Medicare paid the provider for this claim is $3,460.56.

**THIS IS NOT A BILL - Keep this notice for your records.**



LAW OFFICES
## FLYNN, ROSE & PERKINS
59 North Santa Cruz Avenue, Suite Q
Los Gatos, California  95030
(408) 399-4566
FAX (408) 399-6683

| | | | |
|---|---|---|---|
| **To:** | | **Date:** | 7/16/07 |
| | | **Operator:** | Diane Shumere |
| **Company:** | PENN TREATY NETWORK AMERICAN INSURANCE ~~COMPANY~~ | **Pages:** | 10 |
| **Fax:** | (610) 965-6962 | | |
| **Re:** | Gloria McCarroll | | |

**Message:**

ATTN: CLAIMS DEPARTMENT

The information contained in this facsimile is confidential and may also be attorney-client privileged. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone or return the original message to us at the address above via the U.S. Postal Service. Thank you.

Should you experience transmission problems or do not receive all pages of this fax, please call OPERATOR immediately.

\_\_\_\_ Original will not follow.

\_\_✓\_ Original/Copy will follow via:   ✓ Regular Mail
\_\_\_ Overnight Mail
\_\_\_ Courier

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for
F,R & P
(408) 399-6683
Jul 16 2007 3:30pm

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jul 16 | 3:07pm | Sent | 916109656962 | 2:54 | 10 | OK |

Result:
  OK - black and white fax

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
GARY S. ROSE (CA Bar #83744)
FLYNN, ROSE & PERKINS
59 N. Santa Cruz Avenue, Suite Q
Los Gatos, California 95030
TELEPHONE NO.: (408) 399-4566   FAX NO.: (408) 399-6683
ATTORNEY FOR (Name): Plaintiff GLORIA McCARROLL

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, California 95113
BRANCH NAME:

FOR COURT USE ONLY

ENDORSED

2007 AUG 24  P 1: 26

CASE NAME:
Penn Treaty Network America Insurance Co. and Does 1-10, inclusive

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 1 0 7 C V 0 9 2 9 0 5 |
| --- | --- | --- |
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT: |

*Items 1–5 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Collections (09)
[✓] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
  b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve   in other counties, states, or countries, or in a federal court
  c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
  a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive

4. Number of causes of action (specify):

5. This case [ ] is [✓] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 24, 2007

GARY S. ROSE, Attorney for Plaintiff
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. January 1, 2007] | CIVIL CASE COVER SHEET | American LegalNet, Inc. www.FormsWorkflow.com | Cal. Rules of Court, rules 3.220, 3.400–3.403; Standards of Judicial Administration, § 19 www.courtinfo.ca.gov |

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers**

If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 5 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. You do not need to submit a cover sheet with amended papers. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Complex Cases**

In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice—
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach—Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ—Administrative Mandamus
    Writ—Mandamus on Limited Court
        Case Matter
    Writ—Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal—Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex case type listed above)*
    (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)*
    (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
        Claim
    Other Civil Petition