1  Thomas M. Herlihy (SBN 83615)
   Laura E. Fannon (SBN 111500)
2  KELLY, HERLIHY & KLEIN LLP
   44 Montgomery Street, Suite 2500
3  San Francisco, CA 94104-4602
   Telephone: (415) 951-0535
4  Facsimile: (415) 391-7808

5  Attorneys for Defendant
   PENN TREATY NETWORK AMERICA INSURANCE
6  COMPANY

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  GLORIA McCARROLL,                     CASE NO.

12              Plaintiff,

13       vs.                              **DECLARATION OF THOMAS M.
                                          HERLIHY IN SUPPORT OF NOTICE OF
14  PENN TREATY NETWORK                   REMOVAL OF CAUSE TO FEDERAL
    AMERICA INSURANCE COMPANY,            COURT**
15  and DOES 1 through 10, inclusive,

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28
                                   1

1        I, Thomas M. Herlihy, declare as follows:

2        1.   I am a member in good standing of the bar of the State of California and of

3    the bar of this court.  I am a partner with the law firm of Kelly, Herlihy & Klein LLP, counsel for

4    defendant Penn Treaty Network America Insurance Company ("Penn Treaty") in this case.  The

5    following facts are based upon my personal knowledge and upon the records maintained by Kelly,

6    Herlihy & Klein LLP in the regular and ordinary course of conducting its business.  If called as a

7    witness, I could and would testify competently to the following facts.

8        2.   I submit this declaration in support of Penn Treaty's Notice of Removal.

9        3.   Attached hereto as Exhibit A is a true and correct copy of insurance policy

10   no. N772186, issued by Penn Treaty to Gloria McCarroll, effective August 6, 2001, that was

11   attached to the complaint filed in the captioned action.

12       4.   Attached hereto as Exhibit B is a true and correct copy of the Notice of

13   Removal filed in *Ansley v. Metro. Life Ins. Co.*, 03 Civ. 80 (D. Ariz.).

14       5.   Attached hereto as Exhibit C is a true and correct copy of the Notice of

15   Removal filed in *Nasiri v. Allstate Indem. Co.*, 99 Civ. 3942 (N.D. Cal.).

16       6.   I declare under penalty of perjury under the laws of the State of California

17   and of the United States of America that the foregoing is true and correct.

18       Executed September 2+, 2007, at San Francisco, California.

20       By: _____
    Thomas M. Herlihy

2

DECLARATION OF THOMAS M. HERLIHY
IN SUPPORT OF PENN TREATY'S NOTICE OF REMOVAL

**EXHIBIT  A**

# California Life and Health Insurance
## Guarantee Association Act
### Summary Document and Disclaimer

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guarantee Association ("CLHIGA"). The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guarantee Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided through the Association is not unlimited, as noted in the box below, and is not a substitute for consumers' care in selecting insurers.

> The California Life and Health Insurance Guarantee Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.
>
> Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.
>
> Insurance companies or their agents are required by law to give you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the Guarantee Association to induce you to purchase any kind of insurance policy.
>
> Policyholders with additional questions should first contact their insurer or agent or may then contact:
>
> California Life and Health Insurance            Consumer Service Division
> Guarantee Association                           California Department of Insurance
> P.O. Box 17319                                  300 South Spring Street
> Beverly Hills, CA 90209-3319                    Los Angeles, CA 90013

Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

## COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guarantee Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

(please turn over)

NOTICE (CA)



## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guarantee Association if:

- Their insurer was not authorized to do business in this state when it issued the policy or contract;
- Their policy was issued by a health care service plan (HMO), Blue Cross, Blue Shield, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society;
- They are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Guarantee Association also does not provide coverage for:

- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarantee rights to group contract holders, not individuals;
- Employer and association plans, to the extent they are self-funded or uninsured;
- Synthetic guaranteed interest contracts;
- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- Any policy of reinsurance unless an assumption certificate was issued;
- Interest rate yields that exceed an average rate;
- Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNTS OF COVERAGE   The Act limits the Association to pay benefits as follows:

### LIFE AND ANNUITY BENEFITS

- 80% of what the life insurance company would owe under a life policy or annuity contract up to
- $100,000 in cash surrender values,
- $100,000 in present value of annuities, or
- $250,000 in life insurance death benefits.
- A maximum of $250,000 for any one insured life no matter how many policies and contracts there were with the same company, even if the policies provided different types of coverages.

### HEALTH BENEFITS

- A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

### PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.

## NOTICE (CA)

# PENN TREATY NETWORK AMERICA
# LIFE INSURANCE COMPANY<sup>SM</sup>

3440 Lehigh Street, PO Box 7066
Allentown, PA 18105-7066
(800) 362-0700



## COMPREHENSIVE LONG TERM CARE
### THIS POLICY PROVIDES BENEFITS FOR CARE PROVIDED
### IN YOUR HOME, IN YOUR COMMUNITY & IN A LONG TERM CARE FACILITY

### TAX-QUALIFIED STATUS

This contract for Long Term Care insurance is intended to be a federally qualified Long Term Care insurance contract and may qualify You for federal and state tax benefits.

### GUARANTEED RENEWABLE FOR LIFE  -  PREMIUMS SUBJECT TO CHANGE

This Policy is guaranteed renewable for Your lifetime, subject to the Policy maximums.  It may be kept in force by the timely payment of premiums.  We cannot refuse to renew this Policy as long as You pay the premiums when due.  We cannot change the renewal premium rates for this Policy during the first three (3) years that it is in force.  We also cannot change the premium rates due to a change in Your age or health; We can only change them if they are changed for all policies in Your state on this Policy form.   Such a change would have to be filed with and approved by Your state commissioner of insurance.  Notice of any such change in premiums will be sent at least thirty-one (31) days in advance.  (Payment of the renewal premium will not restore or replenish the benefits available under this Policy.  Please refer to the Policy's **Restoration of Benefits** provision on Page 18 to learn how benefits may be restored.)

### NOTICE OF THIRTY (30) DAY RIGHT TO EXAMINE POLICY

Carefully read this Policy as soon as You receive it.  If You are not satisfied for any reason, You may return it to Us, or Our authorized agent, within thirty (30) days of Your receiving it.  We will refund the entire premium paid directly to You within thirty (30) days of the Policy being returned.  Upon Our receipt of the returned Policy, the Policy will be considered void from the beginning.

*NOTICE TO BUYER:  This Policy may not cover all of the costs associated with Long Term Care incurred by the buyer during the period of coverage.  The buyer is advised to review carefully all Policy limitations.*

CAUTION: THE ISSUANCE OF THIS POLICY IS BASED UPON YOUR RESPONSES TO THE QUESTIONS ON YOUR APPLICATION.  A COPY OF YOUR APPLICATION IS ATTACHED.  IF YOUR ANSWERS ARE INCORRECT OR UNTRUE, WE HAVE THE RIGHT TO DENY BENEFITS OR RESCIND YOUR POLICY.  THE BEST TIME TO CLEAR UP ANY QUESTIONS IS NOW, BEFORE A CLAIM ARISES!  IF, FOR ANY REASON, ANY OF YOUR ANSWERS ARE INCORRECT, CONTACT US AT OUR HOME OFFICE:  3440 LEHIGH STREET, PO BOX 7066, ALLENTOWN, PA 18105-7066.

*PF2600-2-TQ(CA)R*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| 1. | Tax-Qualified Status | 1 |
| 2. | Renewability Terms | 1 |
| 3. | Notice of Thirty (30) Day Right to Examine Policy | 1 |
| 4. | Notice to Buyer | 1 |
| 5. | Caution Statement | 1 |
| 6. | Policy Schedule | 3 |
| 7. | Section I:  Home Care and Community-Based Care Benefits | 4 |
|  | Homemaker Care Benefits | 4 |
|  | Personal Care Benefits | 6 |
|  | Home Health Care Benefits | 7 |
|  | Adult Day Care Benefits | 8 |
|  | Hospice Care Benefits | 9 |
|  | Respite Care Benefits | 10 |
|  | Early Notification of Claim Benefits | 11 |
| 8. | Section II:  Facility Benefits | 12 |
|  | Assisted Living Facility Benefits | 12 |
|  | Nursing Facility Benefits | 13 |
| 9. | Section III:  Conditions of Eligibility | 14 |
| 10. | Section IV:  Additional Benefits | 16 |
|  | Care Solutions[SM] Benefits | 16 |
|  | Family Member as Caregiver Benefits | 16 |
|  | Family Member Training Benefits | 17 |
|  | Meals on Wheels Benefits | 17 |
|  | Bed Reservation Benefits | 17 |
|  | Alternative Plan of Care Benefits | 18 |
|  | Restoration of Benefits | 18 |
|  | Waiver of Premium Benefits | 19 |
| 11. | Section V:  Benefit Limitations | 20 |
|  | Maximum Daily Benefit | 20 |
|  | Maximum Lifetime Benefit | 20 |
|  | Home/Community-Based Care Elimination Period | 20 |
|  | Facility Elimination Period | 21 |
|  | Pre-Existing Conditions Limitation | 21 |
| 12. | Section VI:  Additional Features | 22 |
|  | Third Party Notification of Lapse | 22 |
|  | Reinstatement for Loss of Cognitive/Functional Capacity | 22 |
|  | Our Promise – Your Right to Convert to a non-tax-qualified Policy | 22 |
|  | Extension of Benefits | 23 |
| 13. | Section VII:  Exclusions | 24 |
| 14. | Section VIII:  General Contract Provisions | 25 |
|  | Claims Under this Policy – What to do when You have a Claim | 26 |
| 15. | Application | Attached |

# POLICY SCHEDULE

**POLICY NUMBER** N772186

**EFFECTIVE DATE**
08/06/01
**FIRST RENEWAL DATE**
08/29/01

**INSURED** GLORIA L MCCARROLL

**AGE** 68

**INITIAL PREMIUM**
$293.33

**POLICY FEE**
$25.00

**RENEWAL PREMIUM**
$361.39

## PREMIUMS

**ANNUAL**
$4,015.44

**SEMI-ANNUAL**
$2,088.03

**QUARTERLY**
$1,064.09

**MONTHLY**
$361.39

**AUTOMATIC BANK WITHDRAWAL (MONTHLY)**
$341.31

## BENEFITS

**MAXIMUM DAILY BENEFIT**                                      $100.00

**MAXIMUM LIFETIME BENEFIT**                                   $150,000.00

**HOME/COMMUNITY-BASED CARE ELIMINATION PERIOD**      100  DAYS
    (The **Home/Community-Based Care Elimination Period** shown is applicable
    when **Early Notification of Claim** is provided.  The **Home/Community-Based
    Care Elimination Period** will be increased by thirty (30) days if **Early Notification
    of Claim** is not provided.  Please refer to the **Early Notification of Claim** provision
    on Page 11 for more details.)

**FACILITY ELIMINATION PERIOD**                               100  DAYS

**RESTORATION OF BENEFITS**                                   INCLUDED

(THE PREMIUMS SHOWN ABOVE INCLUDE PREMIUMS FOR ANY RIDERS ISSUED ON THE SAME DATE AS THIS POLICY).

## RIDERS ISSUED ON THE SAME DATE AS THIS POLICY

*PF2600-2-TQ(CA)R*

*PAGE 3*

# SECTION I. HOME CARE AND COMMUNITY BASED CARE BENEFITS

This section tells You about the benefits available for care and assistance received in Your home and community and explains how You qualify for these benefits.

Important words and terms, which will help You understand the benefits available under this Policy, and the circumstances under which these benefits are payable, appear in **bold print** throughout the Policy. They appear in *italicized bold print* where they are defined.

Whenever "You" and "Your" appears in this Policy, it refers to the Insured listed in the Policy Schedule. "We", "Us" and "Our" refers to Penn Treaty Network America Life Insurance Company[SM].

## HOMEMAKER CARE BENEFITS

For each day You receive **Homemaker Care** in Your **Home** and meet the **Conditions of Eligibility,** We will pay the lesser of:
  1) the actual charge incurred; or
  2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

> The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Homemaker Care* is assistance with the **Instrumental Activities of Daily Living. Homemaker Care** may be provided by a skilled or unskilled person capable of helping with these activities.

The *Instrumental Activities of Daily Living* are the basic functional activities necessary for You to remain safely in Your **Home** and include the following:
  1) Meal Preparation is the preparation of food for human consumption, including cooking and cleanup.
  2) Shopping/Travel is utilizing public or private transportation to get to a store and shop for groceries, pick up prescriptions and to get to medical appointments.
  3) Light Housekeeping is maintaining a clean **Home** living environment so that Your health, safety and welfare are not jeopardized. Light Housekeeping does not include any type of **Home** construction or maintenance, work on the exterior of the

**Home**, heavy cleaning such as annual "spring cleaning", lawn care, snow removal, maintenance of a vehicle, or any other service provided outside the **Home**.

4)  <u>Laundry</u> is washing, drying and storing Your clothing, bed linens, etc.
5)  <u>Telephoning</u> is using a telephone to make calls.
6)  <u>Handling Money/Bill Paying</u> is depositing and/or withdrawing funds at a financial institution, writing checks to pay bills, etc.
7)  <u>Medication Management</u> is safely controlling, dispensing and/or administering medications prescribed by a **Physician** in the proper dosages and at the proper times.

*Home* is Your personal residence, whether it is in a private dwelling owned or leased by You, and includes a home for the retired or aged. It does not include a hospital, sanitarium, **Assisted Living Facility** or **Nursing Facility**. (Please refer to Page 12 for the definition of **Assisted Living Facility** and Page 13 for the definition of **Nursing Facility**.)

*Physician* is anyone, other than You or a **Family Member**, properly licensed as a practitioner of the healing arts and operating within the scope of that license.

A *Family Member* is You and Your spouse, and Your and Your spouse's respective parents, grandparents, siblings, children, grandchildren, aunts, uncles, cousins, nephews, nieces and in-laws.

# PERSONAL CARE BENEFITS

For each day You receive **Personal Care** in Your **Home** and meet the **Conditions of Eligibility**, We will pay the lesser of:

       1) the actual charge incurred; or

       2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

> The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Personal Care* is assistance with the **Activities of Daily Living** and/or assistance with the **Instrumental Activities of Daily Living**. **Personal Care** may be provided by a skilled or unskilled person capable of helping with these activities. (Please refer to Page 14 for the definition of **Activities of Daily Living** and Page 4 for the definition of **Instrumental Activities of Daily Living**.)

# HOME HEALTH CARE BENEFITS

For each day You receive **Home Health Care** in Your **Home** and meet the **Conditions of Eligibility**, We will pay the lesser of:

    1) the actual charge incurred; or
    2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

**Home Health Care** is skilled nursing services or other medical services, performed by a licensed registered nurse (RN), licensed practical nurse (LPN), licensed vocational nurse (LVN), chemotherapy specialist, enterostomal specialist, total parenteral nutrition specialist, physical therapist, speech therapist, occupational therapist or any other duly-licensed provider of said services.

# ADULT DAY CARE BENEFITS

For each day You receive **Adult Day Care** and meet the **Conditions of Eligibility**, We will pay the lesser of:

1) the actual charge incurred; or
2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Adult Day Care* is medical or non-medical care provided on a less than 24-hour basis in an **Adult Day Care Center** for persons in need of personal services, supervision, protection and/or assistance in sustaining daily needs, including the **Activities of Daily Living** and taking medications.

*Adult Day Care Center* is a facility, which is established and operated in accordance with any applicable state, or local laws required in order to provide **Adult Day Care** and is licensed, if so required.

PF2600-2-TQ(CA)R

# HOSPICE CARE BENEFITS

For each day You receive **Hospice Care** and meet the **Conditions of Eligibility**, We will pay the lesser of:

        1) the actual charge incurred; or
        2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Hospice Care* is an outpatient service designed to provide palliative care; alleviate the physical, emotional, social and spiritual discomforts when You are experiencing the last phases of life due to the existence of a terminal disease; and provide supportive care to Your primary caregiver and Your family.

# RESPITE CARE BENEFITS

For each day You receive **Respite Care** and meet the **Conditions of Eligibility**, We will pay the lesser of:

1) the actual charge incurred; or
2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details and to Page 20 for the definition of **Home/Community-Based Care Elimination Period**.)

*Respite Care* may be Homemaker Care, **Personal Care, Home Health Care**, or care provided in an **Assisted Living Facility, Nursing Facility** or **Adult Day Care Center**, the purpose of which is to temporarily relieve the primary caregiver. (Please refer to Page 12 for the definition of **Assisted Living Facility** and Page 13 for the definition of **Nursing Facility**.)

This benefit is payable for a maximum of fifteen (15) days per calendar year and is not subject to the **Home/Community-Based Care Elimination Period** or the **Facility Elimination Period**. Any days not used in a calendar year cannot be carried over to any subsequent years. (Please refer to Page 20 for the definition of **Home/Community-Based Care Elimination Period** and Page 21 for the definition of **Facility Elimination Period**.)

## Early Notification of Claim

As previously stated, You will be eligible for the **Home/Community-Based Care Elimination Period** shown in the Policy Schedule, if You, or someone authorized to act on Your behalf, notifies Us that You are receiving, or will be receiving, care/assistance for which benefits may be payable under this Policy. To notify Us, You must call Our Claims Department at (800) 362-0700 and tell Us that You are receiving, or will be receiving, care/assistance covered by this Policy. You should specifically tell Us that You are calling to give Us "**early notification**" that You will have a claim. If **Early Notification of Claim** is not provided, the **Home/Community-Based Care Elimination Period** shown in the Policy Schedule will be increased by thirty (30) days.

To be eligible for the **Home/Community-Based Care Elimination Period** shown in the Policy Schedule, You must call Us within fifteen (15) calendar days of the care/assistance beginning. We will acknowledge Your having satisfied this **Early Notification of Claim** provision by mailing You a written confirmation within five (5) business days of Your contacting Our office. Notifying Your agent does not satisfy the **Early Notification of Claim** provision. You, or Your personal representative, must call Our office at (800) 362-0700 to satisfy this provision.

When You call Our office, We may have an in-house Registered Nurse speak to You to gather information about Your condition and evaluate Your needs. If this telephone interview does not provide Us with the information We need to properly assess Your claim, We may follow-up by having a health care professional (usually a Registered Nurse) from Your local area visit You to conduct a face-to-face assessment. The purpose of such an assessment is to provide Us with information about what You can and cannot do for Yourself and what type of care/assistance You need to be able to safely live at **Home**. When Your needs are assessed by either an in-house Registered Nurse or a health care professional, he/she will develop a written **Plan of Care** designed to meet Your individual needs.

**SECTION II  FACILITY BENEFITS**
This section tells You about the benefits available for care and assistance received in a long term care facility.

## ASSISTED LIVING FACILITY BENEFITS

For each day You are **confined** to an **Assisted Living Facility** and meet the **Conditions of Eligibility**, We will pay the lesser of:

    1) the **Assisted Living Facility's Daily Fee**; or
    2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 14 for the **Conditions of Eligibility**.)

**Confined** is assigned to a bed and physically present within the facility.

An **Assisted Living Facility** is a facility licensed by the appropriate federal or state agency to engage primarily in providing care and unscheduled services to resident inpatients and which:

    1) provides twenty-four (24) hour a day care and services sufficient to support needs resulting from inability to perform **Activities of Daily Living** and/or **Cognitive Impairment**;
    2) has a trained and ready to respond employee on duty at all times to provide care and services;
    3) provides three (3) meals a day and accommodates special dietary needs; and
    4) has the appropriate methods and procedures to provide necessary assistance to residents in the management of prescribed medications.
    (Please refer to Page 14 for the definition of **Activities of Daily Living** and Page 15 for the definition of **Cognitive Impairment**.)

If a facility or institution (such as a congregate care facility or life care community) has multiple licenses and/or multiple purposes, only the section, wing, ward or unit (including a separate room or apartment) that specifically qualifies as an **Assisted Living Facility** will be covered by this Policy.

An **Assisted Living Facility** may sometimes be called a licensed Residential Care Facility, Adult Congregate Living Facility, Personal Care Facility or Sheltered Living Facility. Any facility, or section thereof, known by one of these names, or any other name, will be considered eligible if it meets this Policy definition of an **Assisted Living Facility**.

**Assisted Living Facility's Daily Fee** is the facility's daily rate for room and board and assisted living care provided by the **Assisted Living Facility's** staff, and ancillary supplies and services. Incidental expenses, such as **Physician's** services, medications, pharmaceuticals, toiletries, transportation charges and beautician's services will not be considered as part of the **Assisted Living Facility's Daily Fee**.

*PF2600-2-TQ(CA)R*

# NURSING FACILITY BENEFITS

For each day You are **confined** to a **Nursing Facility** and meet the **Conditions of Eligibility**, We will pay the lesser of:

        1) the **Nursing Facility's Daily Fee**; or
        2) the **Maximum Daily Benefit** listed in the Policy Schedule.

(Please refer to Page 12 for the definition of **confined** and Page 14 for the **Conditions of Eligibility**.)

A **Nursing Facility** is a facility, or distinctly separate part of a hospital or other institution, which is licensed by the appropriate federal or state agency to engage primarily in providing nursing care and related services to inpatients, and which:

        1) provides twenty-four (24) hour a day nursing services;
        2) has a nurse on duty or on call at all times;
        3) maintains clinical records for all patients; and
        4) has appropriate methods and procedures for handling and administering drugs and biologicals.

If a facility or institution (such as a congregate care facility or life care community) has multiple licenses and/or multiple purposes, only the section, wing, ward or unit (including a separate room or apartment) that specifically qualifies as a **Nursing Facility** will be covered by this Policy.

A **Nursing Facility** may sometimes be called a Skilled Nursing Facility, Intermediate Care Facility or Custodial Care Facility. Any facility, or section thereof, known by one of these names, or any other name, will be considered eligible if it meets this Policy's definition of a **Nursing Facility**.

**Nursing Facility's Daily Fee** is the daily rate for room and board, nursing care provided by the **Nursing Facility's** staff, and ancillary supplies and services. Incidental expenses, such as **Physician's** services, medications, pharmaceuticals, toiletries, transportation charges and beautician's services, will not be considered as part of the **Nursing Facility's Daily Fee**.

## SECTION III  CONDITIONS OF ELIGIBILITY
### This section explains how You become eligible for the benefits of this Policy.

The care/assistance You require must be provided pursuant to a **Plan of Care** developed by a **Licensed Health Care Practitioner** which certifies that You are a **Chronically Ill Individual**. To be certified as a *Chronically Ill Individual*:

1) You must be unable to perform at least two (2) **Activities of Daily Living** without **Substantial Assistance** for a period of at least ninety (90) days due to the loss of functional capacity;

### OR

2) You must require supervision to protect You from threats to health and safety due to **Severe Cognitive Impairment.**

The *Plan of Care* specifies the type of care/assistance that is necessary and certifies that You are a **Chronically Ill Individual**. This certification must be made at the time the care/assistance is received, or during the preceding twelve (12) months. (Certification of Your condition may be required periodically, but not more than once every thirty-one (31) days.)

A *Licensed Health Care Practitioner* is any **Physician** or any registered professional nurse, licensed social worker, or other individual who meets the requirements prescribed by the Secretary of Health and Human Services. If You choose to use Our free **Care Solutions**[SM] service, We can provide a **Care Coordinator** who may act as the **Licensed Health Care Practitioner**. (Please refer to Page 5 for the definition of **Physician** and Page 16 for the definitions of **Care Solutions**[SM] and **Care Coordinator**.)

*Activities of Daily Living* are the basic human functional abilities required for You to remain independent. They are as follows:

1) <u>Eating</u> is feeding oneself by getting food into the body from a receptacle, (such as a plate, cup or table), or by a feeding tube or intravenously.
2) <u>Bathing</u> is washing oneself by sponge bath, or in either a tub or shower, including getting into and out of the tub or shower.
3) <u>Dressing</u> is putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.
4) <u>Transferring</u> is moving into or out of a bed, chair or wheelchair.
5) <u>Toileting</u> is getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
6) <u>Continence</u> is the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel and/or bladder function, the ability to perform associated personal hygiene, including caring for catheter or colostomy bag.

*Substantial Assistance* may be **Hands-on Assistance** and/or **Standby Assistance**.

*Hands-on Assistance* is the physical assistance of another person, without which You would be unable to perform the **Activity of Daily Living**.

*Standby Assistance* is the presence of another person within arm's reach of You that is necessary to prevent, by physical intervention, injury to You while You are performing an **Activity of Daily Living**.

*Severe Cognitive Impairment* is confusion and/or disorientation resulting from a deterioration or loss of intellectual capacity that is not related to, or a result of, mental illness, but which can result from Alzheimer's disease and other forms of Organic Brain Syndrome. **Severe Cognitive Impairment** must result in Your requiring supervision to maintain Your safety and/or the safety of others. This deterioration or loss of intellectual capacity may be established through the use of standardized tests that reliably measure impairment in the following areas: short-term and/or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning.

# SECTION IV: ADDITIONAL BENEFITS
This section tells You about the extra benefits available with this Policy and explains how You can receive them.

# CARE SOLUTIONS<sup>SM</sup>

When You need care/assistance covered by this Policy, We can offer You access to a **Care Coordinator** through the **Care Solutions**<sup>SM</sup> services We make available to Our Policyholders free of charge. The **Care Coordinator** will perform an assessment of Your needs and work with You, Your family and Your **Physician** to see that those needs are met. The **Care Coordinator** will develop a **Plan of Care**, which describes the level of care/assistance You require, the type of caregiver necessary and the schedule of the care/assistance to be rendered. The **Care Coordinator** will also follow-up with You to ensure the plan of care continues to be appropriate in the likely event that Your needs change.

The **Care Coordinator** can also help You identify the care resources available in Your community and contact the caregivers You select to arrange for the delivery of the care/assistance required.

A **Care Coordinator** is a health care professional, usually a Registered Nurse, We contract with to provide Our Policyholders the **Care Solutions**<sup>SM</sup> services described above.

**Care Solutions**<sup>SM</sup> is a free service We offer all of Our Policyholders who need assistance making arrangements for care. Whether You use it is entirely up to You. Use of this service will not reduce, or be paid for through, the benefits of the Policy.

The **Care Coordinator** may also act as the **Licensed Health Care Practitioner** and develop the **Plan of Care** You must have in order to be eligible for benefits under the Policy. (Please refer to Page 12 of this Policy for the definitions of **Licensed Health Care Practitioner** and **Plan of Care**.)

# FAMILY MEMBER AS CAREGIVER BENEFITS

**Homemaker Care, Personal Care** and **Home Health Care** provided by a **Family Member** or someone already living at Your address prior to the inception of, or need for, the care/assistance, is not covered by this Policy, unless the caregiver is pre-approved by Us.

To obtain pre-approval of care/assistance provided by a **Family Member**, other than a spouse or someone living with You prior to the inception of, or need for, the care/assistance, You simply have to call Our Claims Department at (800) 362-0700 to inform Us that You need care/assistance covered by this Policy and that You would like a **Family Member** to provide a portion or all of the care/assistance. We will then ask for information pertaining to Your needs, the **Family Member** and the schedule of the care/assistance to be provided by the **Family Member**.

(Spouses and individuals living with You prior to the inception of, or need for, the care/assistance, will not be eligible for benefits under any circumstances.)

*PF2600-2-TQ(CA)R*

*PAGE 16*

## FAMILY MEMBER TRAINING BENEFITS

If the **Family Member** requires training to provide the care/assistance You need at **Home**, We will provide a **Family Member Training Benefit** for reimbursement of this training. The training must be for the purpose of preparing the **Family Member** to provide for Your care and be pre-approved by Us.

We will pay a lifetime maximum benefit of up to five (5) times the amount of Your original **Maximum Daily Benefit** for the costs of training the **Family Member**.

To obtain pre-approval, You simply have to call Our Claims Department at (800) 362-0700 to notify Us that a **Family Member** will be providing care/assistance and will need training to do so. We will then ask for information pertaining to Your needs, the **Family Member** and the type of care/assistance to be provided by the **Family Member**.

## MEALS ON WHEELS BENEFITS

When You require care/assistance covered by this Policy, We will pay the charge incurred for **Meals on Wheels** to be delivered to Your **Home**, subject to a maximum of $25.00 per day. This benefit is available for a maximum of thirty (30) days per calendar year. Any days not utilized cannot be carried over to any subsequent years. (Once this thirty (30) days in benefits has been exhausted, additional benefits for **Meals on Wheels** can be considered under this Policy's **Alternative Plan of Care Benefits**. Please refer to page 18 for the **Alternative Plan of Care Benefits**.)

*Meals on Wheels* is a community-based service administered by the local Agency for the Aging which provides hot meals to Your **Home**.

In order to be eligible for this benefit, You must satisfy the **Conditions of Eligibility** listed on Page 14 and You must obtain pre-approval from Us. To obtain pre-approval, You simply have to call Us at (800) 362-0700.

## BED RESERVATION BENEFITS

We will pay a *Bed Reservation Benefit* when You are charged to hold Your room in an **Assisted Living Facility** or **Nursing Facility** when hospitalized during the course of an **Assisted Living Facility** or **Nursing Facility** confinement. The amount payable per day under the **Bed Reservation Benefit** shall be equal to the **Assisted Living Facility Benefit** or **Nursing Facility Benefit** payable on the day prior to the hospitalization. This benefit will be limited to thirty (30) days per calendar year on a combined basis. Any days not used in a Calendar Year cannot be carried over to any subsequent years.

# ALTERNATIVE PLAN OF CARE

If You would otherwise qualify for benefits for a confinement to an **Assisted Living Facility** or **Nursing Facility**, You may request that We consider providing benefits for an alternative to such a confinement. A written request must be submitted in advance and describe, in detail, the proposed alternative, as well as the costs of said alternative. The **Alternative Plan of Care** must be a medically acceptable option and be agreed on in advance by You, Your **Physician** and Us. We will review the proposed **Alternative Plan of Care** and, if it is acceptable, let You know specifically under what terms We will pay benefits and the amount of benefits to be paid. Approval or disapproval of the proposed alternative and the benefits to be paid shall be at Our sole discretion.

The **Alternative Plan of Care** must be in lieu of a confinement to an **Assisted Living Facility** or a **Nursing Facility**. An example of an **Alternative Plan of Care** would be to equip Your **Home** with adaptive devices, such as shower bars, a special toilet and a wheelchair ramp, which would enable You to remain at **Home**, and without which You would need to enter an **Assisted Living Facility** or **Nursing Facility**.

Benefits extended under the **Alternative Plan of Care** will be deducted from the **Maximum Lifetime Benefit** listed in the Policy Schedule and will, correspondingly, reduce the benefits available for the other forms of care/assistance covered by this Policy by an equal amount. (Please refer to Page 20 for the definition of **Maximum Lifetime Benefit**.)

# RESTORATION OF BENEFITS

We will restore the **Maximum Lifetime Benefit** of this Policy to the full original amount listed in the Policy Schedule when:

1) You have not been confined to an **Assisted Living Facility** or **Nursing Facility** and You did not receive **Homemaker Care, Personal Care, Home Health Care, Adult Day Care** or **Hospice Care** for a period of one hundred and eighty (180) consecutive days; and

2) Your **Physician** certifies that:
   a) You recovered sufficiently to not require confinement to, and You were not advised to be confined to, an **Assisted Living Facility** or **Nursing Facility**; and
   b) You recovered sufficiently to not receive, and You were not advised to receive, **Homemaker Care, Personal Care, Home Health Care, Adult Day Care** or **Hospice Care**, (whether provided by a **Family Member** or any other caregiver), during that one hundred eighty (180) day period.

There is no limit to the number of times the **Maximum Lifetime Benefit** will restore as long as You meet the above requirements.

# WAIVER OF PREMIUM BENEFITS

Once You have received benefits for ninety (90) continuous days for confinement to an **Assisted Living Facility** or **Nursing Facility** and/or for **Homemaker Care, Personal Care, Home Health Care, Adult Day Care** and/or **Hospice Care** received on a regular basis, (a regular basis is five (5) days or more per week). We will waive the payment of premiums for this Policy and any riders attached to this Policy while You continue to be so eligible for benefits. Premiums that have been paid for coverage that extends beyond the date You become eligible for the **Waiver of Premium Benefits** will be held by Us and applied to any premiums payable once You are no longer eligible for the **Waiver of Premium Benefits**. If You die while eligible for this benefit, the waived premiums held by Us will be refunded to Your estate.

## SECTION V. BENEFIT LIMITATIONS
This section explains the limitations on the benefits available under this Policy.

### MAXIMUM DAILY BENEFIT

The *Maximum Daily Benefit* is the maximum amount We will pay under any one (1) benefit, or combination of benefits, for care/assistance received during the same calendar day. The **Maximum Daily Benefit** is listed in the Policy Schedule.

### MAXIMUM LIFETIME BENEFIT

The *Maximum Lifetime Benefit* is the maximum amount We will pay during Your lifetime under this Policy, unless benefits are restored as described in the **Restoration of Benefits** provision on Page 18. The **Maximum Lifetime Benefit** is essentially a pool of money and it applies to all of the benefits available under this Policy on a combined basis and may be used interchangeably for **Personal Care, Home Health Care, Adult Day Care,** confinement to a **Nursing Facility,** etc. This means each dollar in benefits paid under this Policy will reduce the remaining amount available (the remaining pool of money) for all benefits by an equal amount. (For example, if Your **Maximum Lifetime Benefit** is $75,000 and We pay $10,000 in benefits for **Personal Care,** the total remaining benefits available for **Personal Care** and/or for **Home Health Care,** confinement to an **Assisted Living Facility, Hospice Care,** etc. will be limited to $65,000.) The **Maximum Lifetime Benefit** is listed in the Policy Schedule.

### HOME/COMMUNITY-BASED CARE ELIMINATION PERIOD

The *Home/Community-Based Care Elimination Period* serves as a deductible which must be satisfied before benefits will be available. Specifically, it is the number of days You must receive **Homemaker Care, Personal Care, Home Health Care, Adult Day Care, Hospice Care** or **Respite Care** before You can receive benefits. For each day of care/assistance to be applied towards the satisfaction of the **Home/Community-Based Care Elimination Period,** the care/assistance must be otherwise covered by the Policy and You must otherwise be eligible for benefits. When benefits do begin, they will not be retroactive to the beginning of the **Home/Community-Based Care Elimination Period.**

The **Home/Community-Based Care Elimination Period** and the **Facility Elimination Period** must be satisfied only once during the lifetime of this Policy and applies to all of the benefits available under this Policy on a combined basis. (For example, if You satisfy the **Home/Community-Based Care Elimination Period** and would then require admission to an **Assisted Living Facility,** it will not be necessary for You to satisfy the **Facility Elimination Period.**) The **Home/Community-Based Care Elimination Period** and the **Facility Elimination Period** are listed in the Policy Schedule.

The **Home/Community-Based Care Elimination Period** shown in the Policy Schedule is applicable when You notify Us that You will be receiving care/assistance prior to, or within fifteen (15) calendar days of, the care/assistance beginning. To notify Us, You must call Our Claims Department at (800) 362-0700. The **Home/Community-Based Care Elimination Period** will be increased by thirty (30) days if **Early Notification of Claim** is not provided. (Please refer to the **Early Notification of Claim** provision on Page 11 for more details.)

## FACILITY ELIMINATION PERIOD

The *Facility Elimination Period* serves as a deductible which must be satisfied before benefits will be available. Specifically, it is the number of days You must receive care/assistance in an **Assisted Living Facility** or in a **Nursing Facility** before You can receive benefits. For each day of care/assistance to be applied towards the satisfaction of the **Facility Elimination Period**, the care/assistance must be otherwise covered by the Policy and You must otherwise be eligible for benefits. When benefits do begin, they will not be retroactive to the beginning of the **Facility Elimination Period**.

## PRE-EXISTING CONDITIONS LIMITATION

**Pre-Existing Conditions** listed on the application are covered immediately. **Pre-Existing Conditions**, which are not listed on the application, are not covered unless the care/assistance begins six (6) months or more after the Effective Date shown in the Policy Schedule.

A *Pre-Existing Condition* is a condition for which medical advice or treatment was recommended by or received from a **Physician** within six (6) months preceding the Policy's Effective Date as shown in the Policy Schedule.

*PF2600-2-TQ(CA)R*

## SECTION VI: ADDITIONAL FEATURES
### This section explains 4 additional Policy Features designed to protect You.

## THIRD PARTY NOTIFICATION OF LAPSE

You have the right to designate at least one (1) person who will be notified in the event Your Policy is about to lapse because the renewal premium has not been paid. This is to protect You from losing this valuable coverage in the event You become mentally incompetent or physically incapable of paying the renewal premium when due.

If You elect to designate such a person, Your Policy cannot be canceled for nonpayment of premium unless We have notified the designated person at least thirty (30) days in advance of the cancellation date. Notice shall be given by first class United States mail, postage prepaid, and will be given thirty (30) days after a premium is due and unpaid. Notice shall be deemed to have been given as of five (5) days after the date of Our mailing to the third party.

Your written designation shall include the person's full name and home address and shall become a part of Our records. We shall notify You of the right to change this written designation at least once every two (2) years. If You do not elect to designate a third party to receive notice of cancellation for nonpayment of premium, a written waiver dated and signed by You will become part of Our records. You may elect to designate a third party or change the third party previously designated, at any time, by submitting a written request to Our Home Office.

(Designation of this third party does not constitute acceptance of any liability by this person for the cost of any care/assistance You receive.)

## REINSTATEMENT FOR ALZHEIMER'S DISEASE, OTHER FORMS OF COGNITIVE IMPAIRMENT AND/OR LOSS OF FUNCTIONAL CAPACITY

If Your Policy lapses, We will provide a retroactive continuation of coverage if We receive the following within five (5) months of the date it lapses:

1) Satisfactory proof You had **Cognitive Impairment** (including, but not limited to Alzheimer's Disease) and/or a loss of functional capacity (the inability to perform two (2) or more of the **Activities of Daily Living**); and
2) Payment of all past-due premiums for this Policy and any riders attached to this Policy that were in force on the date of lapse.
(Please refer to Page 14 for the definition of **Activities of Daily Living** and Page 15 for the definition of **Cognitive Impairment**.)

This reinstatement will provide uninterrupted coverage to the same extent that the Policy would have provided had it not lapsed.

PF2600-2-TQ(CA)R

## OUR PROMISE – Your Right To Convert To A Non-Tax-Qualified Policy

In the event the U.S. Congress or the Treasury Department rules the premiums and/or benefits of a non-tax-qualified policy will receive preferential treatment, as is the case with this Policy, You may convert this Policy to a non-tax-qualified Policy at any time prior to its first anniversary. All You have to do is submit a written request to Our Home Office. The premiums of the new Policy will be based on Your original issue age and You will not have to submit additional evidence of insurability for any benefit amounts not exceeding those elected with the original Policy. (The premiums for the non-tax-qualified Policy may be higher because of the additional coverage it provides.) You may also convert this Policy to a non-tax-qualified policy <u>after</u> its first anniversary if You provide evidence of insurability acceptable to Us. The premiums of the new policy will be based on Your original issue age.

## EXTENSION OF BENEFITS

If this Policy terminates while You are eligible for benefits, benefits shall continue to be payable provided the care/assistance continues without interruption and is otherwise covered by the Policy. The extension of benefits beyond the date the Policy is terminated is limited to the benefits remaining in the **Maximum Lifetime Benefit**. (Benefits may be reduced by the amount of premium payable for the duration of the **Maximum Lifetime Benefit** in accordance with the Unpaid Premium provision, which can be found on Page 28.)

# SECTION VII-EXCLUSIONS
This section explains the circumstances under which benefits will not be payable even if You have satisfied all of the other terms of the Policy.

Exclusions: The Policy will not pay benefits for:

1) Care/assistance provided while this Policy is not in force.
2) Care/assistance provided by a **Family Member**, unless pre-approved by Us, or in a facility owned or operated by a **Family Member.**
3) Care/assistance that You would not be legally obligated to pay for in the absence of this insurance.
4) Care/assistance provided outside of the United States or its possessions.
5) Care/assistance payable under any Worker's Compensation or Occupational Disease Law.
6) Care/assistance for mental, nervous or emotional disorders without demonstrable organic origin. **(NOTE:  ALZHEIMER'S DISEASE AND OTHER ORGANIC BRAIN SYNDROMES ARE COVERED BY THE POLICY AS ANY OTHER SICKNESS).**
7) Care/assistance required as a result of war, or an act of war, whether declared or not.
8) Care/assistance required as a result of attempted suicide or intentionally self-inflicted injuries.
9) Care/assistance required as a result of Your being intoxicated or under the influence of a non-**Physician** prescribed narcotic.
10) Care/assistance required as a result of alcoholism and/or drug abuse.
11) Care/assistance required as a result of Your commission of a felony or Your being engaged in an illegal occupation.
12) Care/assistance paid for by Medicare.  Any portion of the charges not paid by Medicare, will be covered, subject to the terms of this Policy.
13) Care/assistance required as a result of cosmetic surgery.

"Care/assistance" refers to **Homemaker Care, Personal Care, Home Health Care, Adult Day Care, Hospice Care, Respite Care** and confinement in an **Assisted Living Facility** and/or **Nursing Facility.**

*PF2600-2-TQ(CA)R*

*PAGE 24*

# SECTION VIII: GENERAL CONTRACT PROVISIONS
Your Long Term Care Insurance Policy is a contract between You and Us. This section explains the general contract provisions that govern this Policy.

**Consideration:** We agree to insure You for the benefits stated in this Policy in consideration of the application received and the payment of the premium, subject to all of the terms, definitions, provisions, limitations and exclusions contained herein:

If You die while insured under the Policy, We will refund the part of any premium paid for coverage that extends beyond the date of Your death. The refund will be made within thirty (30) days of Your receipt of written notice of Your death. It will be paid to Your estate.

**Cancellation:** We cannot cancel this Policy at any time. Once this Policy's thirty (30) day examination period has expired, You may only cancel this Policy on its renewal date. To cancel this Policy You must submit a written request to Our Home Office. If You request We cancel this Policy, the termination of this Policy will take effect on the first renewal date following Our receipt of Your request.

**Effective Date:** Evidence of insurability is required before coverage is provided. Upon approval of Your application, coverage will begin at 12:01 AM, standard time, at Your residence on the Effective Date shown in the Policy Schedule. It ends at 12:01 AM, standard time, on the first renewal date.

**Eligibility For New Benefits:** If We develop new benefits of benefit eligibility not included in this Policy, We will grant You the following rights, provided You have satisfied the **Home/Community-Based Care Elimination Period** and the **Facility Elimination Period**, and You are not currently receiving benefits:
1) You will be notified of the availability of the new benefits or benefit eligibility within twelve (12) months.
2) We shall offer You new benefits or benefit eligibility by replacing this Policy with a new policy. The premiums of the new policy will be based on your original issue age.

**Entire Contract; Changes:** This Policy, including any attached papers, constitutes the entire contract. No change is valid until approved by one of Our executive officers and endorsed hereon or attached hereto. No agent has authority to change this Policy or to waive any of its provisions.

**Grace Period:** A grace period of thirty-one (31) days is granted for the payment of each premium due after the first premium, during which time Your Policy continues in force. If the renewal premium is not paid before the Grace Period ends, Your Policy will lapse. (If You have elected a Third Party to receive notice of Your Policy lapsing, it will lapse thirty (30) days after such notice has been provided.)

*PF2600-2-TQ(CA)R*

## CLAIMS UNDER THIS POLICY:

**What You Should Do When You Have A Home Care or Community-Based Care Claim:**

When You need **Homemaker Care, Personal Care, Home Health Care, Adult Day Care, Hospice Care** or **Respite Care** that may be covered by this Policy, You should immediately call Our Claims Department at (800) 362-0700 if You would like to be eligible for the waiver of the Policy's **Home/Community-Based Care Elimination Period.** Please refer to the **Early Notification of Claim** provision on Page 11.

When You call Us, We will give You further instructions on what forms/information You need to submit. If You elect not to notify Us of Your claim within fifteen (15) calendar days of the care/assistance beginning in accordance with the **Early Notification of Claim** provision, the Claim Forms You will need to complete are enclosed. Please follow the instructions on these forms as they will tell You precisely what You have to do. Following these instructions and submitting the information required will help Us expedite the processing of Your claim. If You have any questions, or if You need additional Claim Forms, please call Us at (800) 362-0700.

**What You Should Do When You Have a Facility Claim:**

When You need to enter an **Assisted Living Facility** or **Nursing Facility**, the Claim Forms You will need to complete are enclosed. Please follow the instructions on these forms as they will tell You precisely what You have to do. Following these instructions and submitting the information required will help Us expedite the processing of Your claim. If You have any questions, or if You need additional Claim Forms, please call Us at (800) 362-0700.

**Reinstatement:** If Your Policy lapses, We can consider reinstating it if We receive the renewal premium and a reinstatement application within six (6) months of the date the premium was due. If We approve Your reinstatement application, Your Policy will be reinstated as of the date of Our approval. If We disapprove Your application, We must do so in writing within forty-five (45) days of receiving the application, otherwise, Your Policy will be reinstated forty-five (45) days after the date of Our receiving the reinstatement application.

The reinstated Policy will cover only loss resulting from accidental injury as may occur after the date of reinstatement and loss due to sickness as may begin more than ten (10) days after the date of reinstatement. In all other respects, both Your and Our rights under the Policy will be the same as before the Policy lapsed. Any premiums We accept for a reinstatement will be applied to the period for which premiums have not been paid. No premium will be applied to any period more than sixty (60) days before the date of reinstatement.

**Conformity with State Statutes:** Any provision of the Policy, which, on its Effective Date, conflicts with the statutes of Your state on such date, is amended to conform to its minimum requirements.

**Right to Change Coverage:** You may, on or after this Policy's first anniversary, reduce the coverage offered by this Policy and, correspondingly, the premium required to keep this Policy in force, by:

1) Reducing the **Maximum Daily Benefit**; or
2) Reducing the **Maximum Lifetime Benefit**, (provided You do not already have the minimum amount available in force); or
3) Converting this Policy to a Nursing Home Only Policy or a Home Health Care Only Policy, if such a policy is available through Our company at the time such a change is elected.

You may make any of these changes without submitting any evidence of insurability and we will use Your age on the original Effective Date to calculate the new premiums. To make such a change, please submit a written request to Our Home Office. We will make the requested change(s) and advise You of the new premium payable. (Please refer to Page 20 for the definitions of **Maximum Daily Benefit** and **Maximum Lifetime Benefit**.)

You may also request to increase Your coverage at any time by contacting Your agent or Our Home Office. Evidence of insurability will be required before any such change can be considered and Your current age will be used to calculate the cost of any coverage added to Your Policy.

**Claim Forms/Proof of Loss:** You must submit the required claim forms or other written proof of loss within ninety (90) days of the occurrence of the loss. If You have a good reason for not doing so, We will not contest the claim. However, You must give Us proof no later than one (1) year from the time normally required unless legally incapable. As sufficient proof of loss, We may request full documentation, such as proof of the actual expenses incurred.

**Payment of Claims:** All benefits will be payable to You, unless You, or someone legally authorized to act in Your behalf, assigns these benefits by providing Us written instructions to pay another party. Any accrued benefits unpaid at Your death will be paid to Your estate, unless said benefits were so assigned to another party.

**Time of Payment of Claims:** Benefits payable under the Policy for any loss incurred will be paid within thirty (30) days after receipt of written proof of loss. Any balance remaining unpaid at the end of Our liability will be paid immediately upon receipt of written proof of loss.

**Claims Involving Other Policies:** Should benefits for care/services covered by this Policy also be available through other coverage, benefits shall be paid in accordance with the age of each respective policy/plan, with the policy/plan having the earliest effective date being the first to provide benefits. After all benefits available under the oldest policy/plan have been paid, any remaining eligible charge(s) shall then be considered under the policy/plan with the second oldest effective date. After benefits have been paid under the second policy/plan, any remaining charge(s) will then be considered under the third oldest policy/plan, and so on, until You have been reimbursed in full for the charge(s) in question. All such charges remain subject to the other terms and conditions of this Policy. (Benefits will not be paid under this Policy to the extent that they would serve to reimburse You, when combined with the benefits paid through any and all other polices/plans, for more than the actual expense incurred.)

**Physical Assessment:** At Our expense, We shall have the right and opportunity to have You examined and/or obtain an independent assessment of Your functional and/or cognitive abilities when and as often as We may reasonably require while a claim is pending.

**Appealing a Denial of Benefits:** You, or someone authorized to act in Your behalf, shall have the right to appeal any denial of a claim, or portion of a claim, made under this Policy. Such appeal

*PF2600-2-TQ(CA)R*                                                                    *PAGE 27*

should be submitted in writing and should explain the basis for your disagreement with Our decision. The appeal should also include any information and/or documentation which supports Your position. We will send You a written explanation of the results of Our review within thirty (30) days of Our receiving Your appeal, or within thirty (30) days of Our receiving any additional information needed to adequately review Your appeal.

**Contestability/Time Limit on Certain Defenses:**  No claim for care/assistance which begins after six (6) months from the Effective Date of coverage will be reduced or denied because a physical condition had existed before the Effective Date of coverage, (refer to the Pre-Existing Conditions Limitation on Page 20), unless this Policy is voided due to a material misstatement made in the application.   After two (2) years from the Effective Date of coverage, no misstatements, except fraudulent ones, made in the application may be used to void this Policy.

**Legal Actions:**  No legal action may be brought to recover on the Policy within sixty (60) days after written proof of loss has been given as required by this Policy. No action shall be brought after the expiration of the applicable statute of limitations from the time written proof of loss is required to be given.

**Misstatement of Age:**  If Your age has been misstated at the time You applied for this Policy, all amounts payable shall be such as the premium paid would have purchased given the correct age.

**Unpaid Premium:**  When a claim is paid, any premium due and unpaid may be deducted from the claim payment.


**IN WITNESS WHEREOF,** We have caused this Policy to be signed by Our President and Secretary.

President

Secretary

PENN TREATY NETWORK AMERICA INSURANCE COMPANY
3440 Lehigh Street
P.O. Box 7066
Allentown, PA 18105-7066

## AMENDMENT OF APPLICATION / POLICY

I, GLORIA L MCCARROLL                                   hereby amend my application/policy to

PENN TREATY NETWORK AMERICA INSURANCE COMPANY,

dated   AUG 06  ,  2001  as follows:

MAXIMUM LIFETIME BENEFIT - $150,000
THE NEW ANNUAL PREMIUM SHALL NOW BE - $4015.44

PENN TREATY
NETWORK AMERICA

AUG 1 6 2001

NEW BUSINESS

I hereby agree that these changes are an amendment to and form a part of the application and/or policy referenced above. These changes are binding on any person who shall have or claim any interest under such policy.

Dated at _SAN JOSE, CA._ this _10_ day of _AUGUST_ 20 _01_

Witness _Daniel D. Gusto_        Signed _Gloria M. Carroll_
                                                        Proposed Insured

Policy No. N772186

Return Signed to the Policy Issue Department
You may also fax the signed amendment to us at 484-232-6369

Form                                                                        N-UN-145

N 772186

# Penn Treaty Network America Life Insurance Company
## 3440 Lehigh Street, Allentown, PA 18103

This contract for Long Term Care Insurance is intended to be a federally qualified Long Term Care insurance contract and may qualify you for federal and state tax benefits.

## I. AGENT INFORMATION:

Agent Name  DANIEL GROTA    Agent Number  25846    Date  6/11/01

## APPLICANT INFORMATION:

Name  GLORIA    L.  (Middle)    MCCARROLL (Last)
(First)

Mailing Address  1091 MELBOURNE BLVD · SAN JOSE, 95116
(Street)    (City)    (State)    (Zip)

Billing Address (complete only if different from Mailing Address)

(Street)    (City)    (State)    (Zip)

How long at current address  42 YEARS

Telephone  (408) 294-2192    E-Mail

Soc. Sec. No.  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    Birth Date  12/15/132

Sex  ☒ Female  ☐ Male    Height  5'14    Weight  194    Age  68    Marital Status  ☐ Single  ☒ Married  ☐ Widow(er)

## II. YOUR LONG TERM CARE STRATEGY:

☒ Personal Freedom℠-TQ    Form No. _____
☐ Assisted Living Plus℠-TQ
☐ Independent Living®-TQ
☐ Secured Risk℠-TQ
☐ Other _____

Maximum Daily Benefit  $100.00
Max. Lifetime Benefit/Benefit Period  360,000.
Elimination Period  100 days

### ALTERNATIVE PAYMENT OPTIONS:
☐ One  ☐ Two  ☐ Five  ☐ Ten
☐ Up to 65  ☒ Pay as you go

### PREMIUM MODE:
☐ Annual  ☐ Semi-Annual  ☐ Quarterly
☐ Monthly  ☐ ACH (When selecting ACH, two (2) months premium & a copy of a voided check is needed.)

### OPTIONAL RIDERS:
☐ Christian Science Facility Rider    Form No. _____
☐ Compound Inflation Rider
☐ Nonforfeiture Premium
  Benefit Rider
☐ Other _____

Maximum Daily Benefit  $ _____
Max. Lifetime Benefit  _____

PENN TREATY
NETWORK AMERICA

JUN 2 2 200

NEW BUSINESS

### UNDERWRITING CLASS:
☐ Preferred  ☐ Premier  ☒ Select
☐ Standard  ☐ Other _____

### PREMIUM CALCULATION:
Annual Premium  $ 2981.44
Application Fee  $ 25.00
Marital Discount
(deduct 10%)  $
Premium Submitted  $ 293.33

Any person who knowingly and with intent to injure, defraud, or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information may be guilty of a felony of the third degree, (as determined by a court of competent jurisdiction).

PTA-APP-TQ(CA)

## III.  Medical Information

Applicant's Name (necessary only if application is faxed)

| | | Yes | No |
|---|---|---|---|
| 1. | Do you need or receive assistance or supervision in performing everyday living activities such as walking, bathing, dressing, eating, transferring or toileting? ...................... | ☐ | ☒ |
| 2. | Are you currently confined to a hospital, Long Term Care facility or are you receiving any type of care or assistance in your home ? ........................................................ | ☐ | ☒ |
| 3. | Have you ever been diagnosed with or treated for Alzheimer's Disease, Dementia, Senility or any other type of Organic Brain Syndrome? ............................................ | ☐ | ☒ |
| 4. | Have you ever been diagnosed with or treated for Acquired Immune Deficiency Syndrome (AIDS), or Aids Related Complex (ARC), or tested positive for the Human Immunodeficiency Virus (HIV)? ........................................................................ | ☐ | ☒ |

> **NOTE:  If any of the above questions are answered "Yes", the applicant is NOT ELIGIBLE for coverage and the application should not be submitted.**

| | | Yes | No |
|---|---|---|---|
| 5. | Within the past five (5) years: | | |
| a) | have you been hospitalized or been advised to be hospitalized? ................................ | ☒ | ☐ |
| b) | have you had any surgical procedures performed or been advised to undergo surgery? | ☒ | ☐ |
| c) | have you been confined to a nursing home or assisted living facility or been advised to be confined to a nursing home or assisted living facility? ...................................... | ☐ | ☒ |
| d) | have you received care in your home or been advised to receive care in your home? . | ☐ | ☒ |
| 6. | Within the past two (2) years, have you received assistance with shopping, cleaning, cooking, laundry or transportation? ..................................................................... | ☒ | ☐ |
| 7. | Within the past two (2) years, have you used a cane, walker or wheelchair? ................ | ☒ | ☐ |
| 8. | Have you ever had an application for life or health insurance (including Long Term Care insurance) declined, rated, modified or postponed? ............................................ | ☐ | ☒ |
| 9. | Have you ever received disability benefits of any type? .......................................... | ☐ | ☒ |
| 10. | Are you currently covered by a Power-of-Attorney (POA) agreement? ......................... | ☐ | ☒ |
| 11. | Within the past five (5) years, have you smoked or used any tobacco products ? ............. | ☐ | ☒ |
| 12. | Within the past five (5) years, have you sought and/or received any medical or surgical advice, examination or treatment for: | | |
| a) | Cancer, Leukemia or Hodgkin's Disease? ....................................................... | ☐ | ☒ |
| b) | Stroke or TIA (Trans-Ischemic Attack)? ........................................................ | ☐ | ☒ |
| c) | Epilepsy or Seizures? ............................................................................... | ☐ | ☒ |
| d) | Parkinson's Disease or any other Central Nervous System Disease or Disorder? ..... | ☐ | ☒ |
| e) | Memory Loss, Forgetfulness or Confusion? ..................................................... | ☐ | ☒ |
| f) | Depression, Psychosis or any other Mental, Nervous, Emotional or Brain Disorder? .. | ☐ | ☒ |
| g) | Nephritis, Kidney Failure or Incontinence? ...................................................... | ☐ | ☒ |
| h) | Cirrhosis of the Liver? .............................................................................. | ☐ | ☒ |
| i) | Diabetes? ............................................................................................. | ☒ | ☐ |
| j) | Osteoporosis, Arthritis or any other Bone, Joint or Muscle Disease or Disorder? .......... | ☒ | ☐ |
| k) | Heart Disease or Disorder? ........................................................................ | ☐ | ☒ |
| l) | Hypertension or any other Circulatory Disorder? ............................................... | ☐ | ☒ |
| m) | Cystic Fibrosis, Emphysema or any other Lung Disease? ..................................... | ☐ | ☒ |
| n) | Drug or Alcohol Abuse? ............................................................................ | ☐ | ☒ |
| 13. | Within the past five (5) years, have you sought and/or received any medical or surgical advice, examination, or treatment for any health condition or symptoms not included in the above medical/health questions? ............................................................... | ☐ | ☒ |

---

**If any question is answered "Yes", please list the complete name(s) and address(es) of all physicians consulted.**

James Cohen

15400 National Ave

Rm 201.

Los Gatos - CA. 95032

(408) 358-2444

If more space is needed, attach a sheet signed by the applicant and check this box. ☐ (check only if additional sheet is submitted)

**PAGE 2 OF 4**

## IV.    Medications

Applicant's Name (necessary only if application is faxed)
_____

Please list all medications currently being taken.

| Medication | Condition | Dosage | Medication | Condition | Dosage |
|---|---|---|---|---|---|
| CUMATHRIN | BLOOD | 5 m | | | |
| DID OF TEN AC | ARTHRITIS | 2 | | | |
| ATENCL | BLOOD PRESENT | 100 | | | |
| GLYBERUIDE | DIABETES | 5 | | | |

If more space is needed, attach a sheet signed by the applicant and check this box. ☐ (check only if additional sheet is submitted)

## V.    Family Physician

Physician's Name: JAMES COHEN        Telephone: (408) 358-8444

Address: 1540 NATIONAL AVE #201   Los Gatos, CA. 95032

## VI.    Additional Information

1. Do you now, or did you within the last twelve (12) months, have another Long Term Care, Nursing Home and/or Home Health Care insurance policy or certificate (including health service contract or health maintenance organization contract) in force? ..   Yes ☐  No ☒
   a) If "Yes", with what company? _____
   b) If the policy or certificate has lapsed, when did it lapse? ...........................   ___/___/___   Yes ☐  No ☒
2. Do you intend to replace any of your medical or health insurance with this policy? ............   Yes ☐  No ☒
   If "Yes", a completed Replacement Form MUST be submitted with the Application.
3. Are you covered by Medicaid? (If you are eligible for or covered by Medicaid, you should reconsider your decision to purchase a policy as it may not be financially suitable) ...........   Yes ☐  No ☒
4. Agent to list all policies he or she has sold to the applicant in the last five (5) years.
   (Use additional signed sheet if necessary.)

| Company | Policy/Certificate Number | Type of Coverage | Effective Date of Coverage | Currently in Force? | If Lapsed, Give Date |
|---|---|---|---|---|---|
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |
| | | | | ☐ Yes ☐ No | |

## VII.    Inflation Protection

I have received the Outline of Coverage and the graphs that compare the benefits and premiums of this policy with and without inflation protection. Specifically, I have reviewed the Lifetime Inflation Rider information and I :
   ☐ accept Compound Inflation Protection.    ☒ reject Compound Inflation Protection.

## VIII.    Nonforfeiture Protection

I have reviewed the Outline of Coverage and the explanation of the Nonforfeiture Option. I realize that the rider provides me with the right to maintain a portion of my maximum lifetime benefits / benefit period in the event the policy lapses after having been continuously in force for at least three (3) years. Specifically, I have reviewed the Nonforfeiture Rider and I :
   ☐ accept Nonforfeiture Protection.    ☒ reject Nonforfeiture Protection.

Applicant's Name (necessary only if application is faxed)

## IX.    Third Party Designation - Protection Against Unintended Lapse

I understand that I have the right to designate at least one (1) person other than myself to receive notice of the cancellation of this Long Term Care insurance policy for nonpayment of premium. I understand that notice to my designee will not be given until thirty (30) days after a premium is due and unpaid.

☒  I elect to designate this person to receive such notice:

Name:  DoLORES    WALSChON
Address:  18  Sunryvale.        9an CARLOS  CA. 94070
Telephone:  (650 - 591 - 665)

☐  I elect not to designate any person to receive such notice at this time.

## X.    Acknowledgments/Release of Medical Information

*I hereby declare* that all statements, answers and elections as recorded herein are full, complete and true. It is understood and agreed that: a copy of this application shall be attached to and form a part of any policy issued; no insurance hereby applied for shall take effect unless a policy has been delivered to me and the initial term premium is paid in full; and, if issued, coverage will begin in force as of the effective date shown in the policy schedule. I hereby affirm that I have read, or had read to me, the completed application. I realize that any missing and/or inaccurate information or fraudulent statement in the application may result in loss of coverage under the policy, subject to its Time Limit on Certain Defenses. I realize no agent shall have the right or authority to make, alter, modify or discharge any contract or policy issued on the basis of this application.

*I hereby authorize* any licensed physician, medical practitioner, medically-related facility or insurance company that has any records of my health to give Penn Treaty Network America Life Insurance Company such information in the event that Penn Treaty Network America Life Insurance Company finds it necessary in order to evaluate my application for insurance. A photocopy of this authorization shall be as valid as the original. This authorization shall be valid for six (6) months and I understand that I, or my authorized representative may obtain a copy of this authorization at my request.

*I have read* the Outline of Coverage for the policy applied for. If I am age 65 or older, I have also received the "Guide to Health Insurance for People with Medicare" and the required Medicare Disclosure Statement, if applicable.

CAUTION: IF YOUR ANSWERS ON THIS APPLICATION ARE INCORRECT OR UNTRUE, PENN TREATY NETWORK AMERICA LIFE INSURANCE COMPANY MAY HAVE THE RIGHT TO DENY BENEFITS OR RESCIND YOUR POLICY.

Dated:  6 11 101    at    CA .    Alicia Mc Carroll
                              State Signed          Signature of Applicant

## XI.    Agent's Report (must be completed and signed)

1. Did you personally interview the applicant and witness his/her signature? ☒ Yes ☐ No
2. Was anyone else present? ☐ Yes ☒ No    If yes, who? _____
3. Did you observe any physical or mental impairments with regard to memory, walking or speaking, or any form of tremor? ☐ Yes ☒ No    If yes, explain. _____
4. Does the applicant live alone? ☒ Yes ☐ No    If no, with whom does the applicant reside? _____
5. If there is a spouse, is he/she applying? ☐ Yes ☒ No
6. If the spouse is not applying, please explain the reason(s). Does NOT QUALIFY IN N. HOME
7. Type of Dwelling:    ☒ Private Home    ☐ Apartment    ☐ Mobile Home   . ☐ Retirement Home
                       ☐ Nursing Facility    ☐ Adult Congregate Living Facility    ☐ Other _____
8. Did you review the current accident and health insurance coverage of the applicant and find that additional coverage of the type and amount applied for is appropriate for the applicant's needs? ☒ Yes ☐ No

I verify that this application has been read by, or read to, the above named applicant and I have truly and accurately recorded on this application the information supplied by the applicant.

Daniel A. Scot        6 11 101        0572232
Signature of Licensed Resident Agent    Date    State License I.D. No.

**EXHIBIT  B**



LAW OFFICES
MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.
2800 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, ARIZONA 85004-1043
TELEPHONE (602) 240-3000
FACSIMILE (602) 240-6600
(AZ BAR FIRM NO. 00449900)
Robert C. Hackett (AZ Bar No. 001588)
Daniel P. Beeks (AZ Bar No. 012628)
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Mona Ansley,

        Plaintiff,

v.

Metropolitan Life Insurance Company, a
foreign corporation;

Met Disability;

ABC Corporations; XYZ Partnerships;
John Does 1-10; Jane Does 1-10,

        Defendants,

**CIV 03    80 TUC JMR**

**NOTICE OF REMOVAL**

Pursuant to Rule 2.23, Rules of Practice of the United States District Court for the District of Arizona, and 28 U.S.C. §1446(a), defendant Metropolitan Life Insurance Company ("Defendant"), give notice of removal of the above-captioned action from the Superior Court of the State of Arizona, In and For the County of Pima, Cause No. C2002-6075, to this court.

The grounds for removal are as follows:

1.    Plaintiff is a citizen and resident of Arizona. *See* Complaint at ¶ I.

2.    Defendant is a New York corporation, with its principal place of business in New York.

336639.1\15987-018

1

3.    Complete diversity of citizenship exists between Plaintiff and Defendant.

4.    Plaintiff's complaint does not pray for any specific amount of monetary damages. Presumably this is because Rule 8(g) of the Arizona Rules of Civil Procedure expressly prohibits including dollar amounts for damages in cases that do not involve a sum certain.

Pursuant to Rule 72(e)(1), Arizona Rules of Civil Procedure, however, Plaintiff served a "certificate of compulsory arbitration" in the Superior Court. This certificate states that this litigation was **not** subject to compulsory arbitration. Pursuant to Rule 3.9, Local Rules of Practice for the Superior Court of Pima County, this means that Plaintiff certified that she was seeking at least $50,000 in compensatory and punitive damages.[1] Given that Plaintiff's complaint asserts a claim for insurance bad faith, and seeks to recover punitive damages and attorneys' fees, the amount at issue, exclusive of interest and costs, more likely than not exceeds $75,000.[2]

a.    Although Defendant contends that Plaintiff is not entitled to recover any compensatory or punitive damages, the request for punitive damages can be considered in determining whether the jurisdictional amount has been satisfied. *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (it is proper to consider punitive damages and attorneys' fees in determining whether amount in controversy has been satisfied for purposes of removal).

---

[1]    Rule 72(b), Arizona Rules of Civil Procedure, provides that in determining the amount at issue for purposes of the compulsory arbitration program, the amount considered includes compensatory and punitive damages, but does not include interest, attorneys' fees or costs.

[2]    In cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Under this burden, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *Id.*

       b.    Plaintiff has filed a bad faith claim relating to a disability insurance policy. In determining whether the amount in controversy has been satisfied, "the court should look for guidance to decisions rendered in cases on the same type of suit." *Bolling v. Union Nat'l Life Ins. Co.*, 900 F.Supp. 400 (M.D.Ala.1995). *See also Cross v. Bell Helmets, USA*, 927 F.Supp. 209, 213 n.8 (E.D. Tex. 1996) ("in determining whether a given . . . suit presents an amount in controversy within its jurisdiction at the time of removal, a court may look to damage awards in similar cases"). *Cf. Haisch v. Allstate Ins. Co.*, 942 F.Supp. 1245, 1249 (D.Ariz.1996) (refusing to decide whether courts should look to the existence of large punitive damages awards in similar yet unrelated cases to determine whether the preponderance of evidence standard applicable in removal cases has been met).

      Although Defendant believes the following cases are easily distinguishable from the present matter, the court can take judicial notice of a number of recent disability insurance bad faith verdicts in which juries have made multi-million dollar punitive damage awards:[3]

      *Greenberg v. Paul Revere Life Ins. Co.*, D. Ariz. No. 99-CV-154 (awarding back benefits and future benefits; $151,522 for emotional distress damages; $2.4 million for punitive damages; and $246,350 for attorneys' fees – motions for remittur and new trial denied);

      *Hangarter v. Paul Revere Life Ins. Co.*, --- F.Supp.2d -

---

[3]   Given the constitutional limits associated with punitive damages, and the amount of actual insurance benefits at issue in this litigation, it will likely be impossible for Plaintiff to recover a seven-figure award of punitive damages.

336639.1\15987-018               3

1    —, 2002 WL 31526543 (N.D. Cal. 11/12/02) (awarding past
2    and future benefits; $400,000 for emotional distress damages;
3    $5 million for punitive damages; $750,000 for attorneys' fees
4    — motions for judgment as a matter of law and for new trial
5    denied);

6        *Stephen McKendry v. General American Life*
7    *Insurance Co.*, et al., No. CIV 96-0754 (jury awarded
8    $150,000 in past benefits, $200,000 for emotional distress,
9    and $10.2 million of punitive damages – new trial
10   subsequently granted);

11       *Diamond v. General Am. Life Ins. Co.*, Maricopa
12   County Super. Ct., No. CV 96-02277($58 million punitive
13   damage award in disability insurance bad faith action – later
14   reduced to approximately $18 million by trial court).

15       *See also Zilisch v. State Farm Auto. Ins. Co.*, 194 Ariz. 34,
16   977 P.2d 134 (1998) (affirming $540,000 punitive damage award in
17   insurance bad faith action).

18       There is no reason to believe that Plaintiff is not seeking
19   similar amounts.    Even though these cases involve clearly
20   distinguishable facts, they can be relied upon to demonstrate the
21   potential for large punitive damage awards in cases involving similar
22   claims. *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1033
23   (N.D. Cal. 2002).

24       c.    Plaintiff's Complaint also seeks attorneys' fees,
25   presumably pursuant to A.R.S. § 12-341.01(A). *See, e.g., Sparks v.*
26   *Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 542-44, 647 P.2d 1127,
27   1140-42 (1982) (allowing recovery of attorneys' fees in bad faith
28   action).    In determining whether the amount-in-controversy

requirement has been satisfied, it is appropriate to consider attorneys' fees that are likely to be incurred (and sought as damages) through the time of trial. *See, e.g., Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir.1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034-35 (N.D. Cal. 2002) (appropriate to consider attorneys' fees through conclusion of trial).

Given the complex nature of insurance bad faith litigation, Plaintiff will likely be seeking to recover significant attorneys' fees if they prevail in this case. Similarly, if Defendant prevails, it may be entitled to seek fees from Plaintiff. As established by the attached affidavit from Defendant's attorney, the fees likely to be incurred if this case proceeds through trial are likely to exceed $75,000.

d.    For all of these reasons, it is more likely than not that the damages at issue in this litigation exceed $75,000.

5.    Original jurisdiction would have been proper in this court based upon diversity of citizenship, pursuant to 28 U.S.C. §1332. As such, removal is proper under 28 U.S.C. §1441.

6.    Defendants received notice of the litigation by service of the summons, complaint and certificate of compulsory arbitration ("the Litigation Papers") upon the Director of the State of Arizona Department of Insurance on January 6, 2003. Defendant actually received the Litigation Papers on January 14, 2003. Therefore, this notice of removal has been filed within the 30-day period provided by 28 U.S.C. §1446(b).

7.    None of the other defendants listed in the caption have been served. Therefore, all of the served defendants have joined in and consented to removal of the

336639.1\15987-018                    5

1    litigation to the United States District Court for the District of Arizona.

2        8.      Attached to this notice of removal are copies of:

3            a.      the civil summons served upon Defendant;

4            b.      the complaint served upon Defendant; and

5            c.      the certificate of compulsory arbitration served upon Defendant.

6    These documents constitute all process, pleadings or orders served upon any defendant

7    in the litigation.

8        DATED: February 5, 2003.

9                     MOHR, HACKETT, PEDERSON, BLAKLEY & RANDOLPH, P.C.

10

11                     By

12                     Robert C. Hackett
                       Daniel P. Beeks

13                     Suite 1100
                       2800 North Central Avenue

14                     Phoenix, Arizona 85004-1043
                       Attorneys for Defendants

15

16    COPY of the foregoing mailed
     February 5, 2003, to:

17

18    David Anaise, M.D.
     177 North Church, Suite 200

19    Tucson, Arizona 85701
     Attorney for Plaintiff

20

21

22

23

24

25

26

27

28

1

## Affidavit of Daniel P. Beeks in Support of Notice of Removal

2   STATE OF ARIZONA            )
                                )ss.
3   County of Maricopa          )

4           DANIEL P. BEEKS, being first duly sworn upon his oath, deposes and

5   says:

6       1.    I am one of the attorneys of record for defendant Metropolitan Life

7   Insurance Company ("Defendant").

8       2.    I have represented Defendant in a number of other cases involving claims

9   arising out of disability insurance policies.

10      5.    Based on my experience in other cases involving Defendant, and based on

11  my review of judgments in similar cases, I anticipate that if this case is tried to

12  conclusion, the attorneys' fees incurred by both sides will exceed $75,000.

13          DATED this 5th day of February, 2003.

14

15

16                                          DANIEL P. BEEKS

17

18          SUBSCRIBED AND SWORN TO before me this 5th day of February,

19  2003.

20                                          Notary Public

21      My Commission Expires:

22                  OFFICIAL SEAL
                   MARJORIE D. SMITH
23              NOTARY PUBLIC-ARIZONA
                    MARICOPA COUNTY
                My Comm. Expires April 12, 2003

24

25

26

27
                            Exhibit "A"
28

336639.1\15987-018                        1

JAN 29 2003 13:23 FR METLIFE LAW DEPT.

## ARIZONA SUPERIOR COURT, PIMA COUNTY

| | | |
|---|---|---|
| MONA ANSLEY, Plaintiffs, vs. METROPOLITAN LIFE INSURANCE COMPANY; MET DISABILITY, ABC CORPORATIONS, XYZ PARTNERSHIPS, JOHN DOES 1-10; JANE DOES 1-10, Defendants. | No. **C20026075** CIVIL SUMMONS | STATE OF ARIZONA DEPT. OF INSURANCE JAN 6 2003 TIME *US Mail* SERVICE OF PROCESS **TED B. BOREK** |

THE STATE OF ARIZONA SENDS GREETINGS TO:  METROPOLITAN LIFE INSURANCE COMPANY
MET DISABILITY

I     A lawsuit has been filed against you.

II    If you do not want a Judgment taken against you for the relief demanded in the accompanying Complaint, you must file a Response in writing in the Office of the Clerk of the Superior Court, 110 West Congress, Tucson, Arizona, accompanied by the necessary filing fee. A copy of the Response must also be mailed to the plaintiff/attorney whose name appears below.

III   The Response must be filed within TWENTY DAYS, exclusive of the date of service, if served within the State of Arizona, or within THIRTY DAYS, exclusive of the date of service, if served outside the State of Arizona.

IV    This is a legal document. If you do not understand its consequences, you should seek the advice of an attorney.

WITNESS My Hand and the Seal of the Superior Court.

DATED:  DEC 12 2002
PATRICIA A. NOLAND
CLERK OF THE SUPERIOR COURT

By _Shirley Steins_
Deputy Clerk

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

ATTORNEY'S NAME, ADDRESS, PHONE
David Anaise
177 N. Church Ste. 200
Tucson, AZ 85701
520-628-7777
PCC 65393

RECEIVED
JAN 14 2003

JAN 24 2003 13:24 FR METLIFE LAW DEPT.

David Anaise
Attorney at Law
177 N. Church Ste. 200
Tucson, AZ 85701
State Bar No. 019653
PCC No: 65393

Attorney for Plaintiff

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

| | | |
|---|---|---|
| MONA ANSLEY, | ) | No.    C20026075 |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| vs. | ) | |
| METROPOLITAN LIFE | ) | (Assigned to    ) |
| INSURANCE COMPANY; MET | ) | |
| DISABILITY, ABC | ) | TED B. BOREY |
| CORPORATIONS, XYZ | ) | |
| PARTNERSHIPS; JOHN DOES | ) | |
| 1-10; JANE DOES 1-10, | ) | |
| Defendants. | ) | |

Plaintiff MONA ANSLEY: by and through her undersigned attorneys allege as

follows:

I.

Plaintiff is resident of Tucson, Arizona.

II.

Defendants Metropolitan Life Insurance Company and/or Met DisAbility do

business in Pima County Arizona.

JAN 24 2003 13:24 FR METLIFE LAW DEPT

### III.

ABC CORPORATIONS I-X, XYZ PARTNERSHIPS I-X, JOHN DOES I-X and JANE DOES I-X are names of fictitious corporations, partnerships and individuals. Plaintiffs will request leave of the court to insert the true and correct name of said corporations, partnerships and individuals when and if they are learned. Upon information and belief, ABC CORPORTATIONS I-X, XYZ PARTNERSHIPS I-X, JOHN DOES I-X AND JANE DOES I-X have caused an event to occur in Pima County, Arizona out of which this complaint arises. Some of the Defendants may be liable under the theory of respondeat superior, and some Defendants may be liable because of acts done by other Defendants in furtherance of their marital communities.

### IV.

### COUNT I

### TORT OF BAD FAITH

Plaintiff is a 46 year old female who has been working as a senior court clerk with the City of Tucson. Plaintiff is suffering from insulin dependent diabetes. She was seen by Dr. Carol Hutchinson, D.O. on November 21, 2000, and was determined to be medically disabled at the time. On November 2001, Plaintiff was also determined to be disabled by the Social Security Administration. Prior to the onset of her disability, Plaintiff purchased long term disability insurance through defendant Met Life. On or about November 9, 2000 Plaintiff has applied for Supplemental Retirement insurance from Defendant MetLife.

On April 23, 2002, by letter, Mike Norton, disability case manager for Met Life Met Life informed Plaintiff that her claim for long term disability benefit has been denied. Met Life acknowledged that Plaintiff was working on October 1, 2000, and filed for disability insurance on November 9, 2000. On November 20, 2000, and January 3 and 31, 2001, Defendant Met Life claims that they made unsuccessful

attempts to obtain medical information from the physician's office and that on each

occasion they also sent Plaintiff a letter asking for necessary medical information.

They also claim that on February 14, 2001, they sent claimant an abandonment letter.

In a letter dated April 29, 2002, Plaintiff stated that she has never received any letters

from the insurance asking for any information. Possibly the letters went to the wrong

address as there are two streets name South Queen Palm. One is South Queen Palm

Drive and one is South Queen Palm Court. In addition, during the time of the alleged

mailing of the letters Plaintiff had multiple medical complications including the

amputation of the right leg and exploratory surgery on her right hip. Plaintiff further

alleges that she made telephone calls to the Met Life office on several occasions

trying to find out the progress made on her claim. Defendant acknowledged that

there was a phone call made on November 26, 2001, providing Defendant with the

physician's name and number but "by then it had been more than one year since you

became disabled". Metlife in fact noted a delay of mere 56 days in receiving the

information required. Defendant has not denied that Plaintiff has met the medical

and employment requirement to be determined disabled and receive disability

insurance. The sole reason for the denial is the determination by Met Life that there

was no valid reason for the delay in submitted the long-term disability information.

On May 2002 Met Life formally denied Plaintiff's appeal of the earlier decision.

Plaintiff believes and therefore argues that Defendant acted intentionally and

dealt unfairly and dishonestly with Plaintiff's claim. Defendant failed to give fair and

equal consideration to the Plaintiff's interest. In doing so the Defendant acted

unreasonably toward the Plaintiff and knew that it was acting unreasonably with such

JAN 24 2003 13:24 FR METLIFE LAW DEPT.

reckless disregard that knowledge can be imputed. The tort of bad faith arises when the insurer intentionally denies, fails to process or pay a claim without a reasonable basis to support it. An insurance contract is not an ordinary commercial bargain. Implicit in the contract and the relationship is the insurer's obligation to play fairly with its insured. The insurance contract provides more than just security from financial loss to the insured. The insured is also entitled to receive additional security in knowing that she will be dealt with fairly and in good faith. If an insurer acts unreasonably in a manner in which it processed the claim it will be held liable for bad faith. "The Carrier has an obligation to immediately conduct an adequate investigation, act reasonably in evaluating the claim and act promptly in paying the legitimate claim. They should do nothing to jeopardize the insured's security under the policy and it should not force an insured to go through needless adversarial hoops to achieve its rights under the policy." Zilisch v. State Farm Mutual Auto. Ins. Co., 995 P.2d 276, Ariz.2000.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, in such an amount as will justly compensate her for her damages, for the cost of this action, to deter such action in the future, and for all such further relief as this Court deems just and reasonable.

## COUNT TWO BREACH OF CONTRACT

Plaintiff re-alleges each and every allegation contained in Count One as though fully set forth herein. A contract between Plaintiff and Defendants was formed when Plaintiff enrolled as insured with Defendant and paid her insurance premiums. The Defendant has breached this contract with Plaintiff when they wrongfully denied her

disability insurance for no good cause.

As a direct and proximate result of said breach of contract, Plaintiff Mona Ansley has suffered damages including insufficient funds to care for herself, pain and suffering and other consequential damages

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, in such an amount as will justly compensate her for her damages, for the cost of this action, for attorney's fees, and for all such further relief as this Court deems just and reasonable.

## COUNT THREE

### I.

Plaintiff re-alleges each and every allegation contained in Count One as though fully set forth herein.

### II.

The true names or capacities, whether individual, corporate, partnership, associate or otherwise of the fictitious Defendants, are unknown to Plaintiff who therefore sues said Defendants, and each of them, by such fictitious names. Plaintiff is informed and believes and thereon states that each of the Defendants designated fictitiously herein is responsible for the events and happenings herein alleged. The precise nature of such responsibilities is unknown to Plaintiff but is known to Defendants, and each of them. Said Defendants wantonly, recklessly and in total disregard for the safety of Plaintiff acted in such a way so as to unreasonably expose Plaintiff to probable serious harm.

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, in such an amount as will justly compensate her for her damages, for the cost of

1

2      this action, to deter such action in the future, and for all such further relief as this Court

3

4      deems just and reasonable.

5      Respectfully submitted this 12 day of ___December___ 2002.

6
                                           David Amaise MD JD attorney for the Plaintiff
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JAN 24 2003 13:25 FR METLIFE LAW DEPT.                    TO 9180224000000

1   *Law Office of David Anaise*
    177 N. Church #200
2   Tucson, AZ 85701
    (520) 628-7777
3   State Bar No. 019653
    PCC No. 65393

4
                IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
5
                    IN AND FOR THE COUNTY OF PIMA
6
7                                       NO.  C20026075
8   MONA ANSLEY,
                    Plaintiff,          CERTIFICATE OF COMPULSORY
9                                       ARBITRATION
    and
10                                      (Assigned to            )

11  METROPOLITAN LIFE INSURANCE         TED B. BOREK
    COMPANY; MET DISABILITY, ABC
12  CORPORATIONS XYZ PARTNERSHIPS
    JOHN DOES 1-10; JANE DOES 1-10,
13
                    Defendants.
14

15      The undersigned certifies that he knows the dollar limits and any other limitations set forth by the local

16  rules of practice for the applicable superior court, and further certifies that this case IS NOT subject to

17  compulsory arbitration as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

18      RESPECTFULLY SUBMITTED this 12 day of December, 2002.

19

20

21                                      David Anaise
                                        Attorney for Plaintiff
22

23

24

25

26

27

28

                                                    ** TOTAL PAGE.09 **

**EXHIBIT C**

CYNTHIA L. MELLEMA (State Bar No. 122798)
LETITIA R. TODD (State Bar No. 200142)
SONNENSCHEIN NATH & ROSENTHAL
685 Market Street, 6th Floor
San Francisco, California 94105
Telephone (415) 882-5000
Facsimile (415) 543-5472

Attorneys for Defendant
ALLSTATE INDEMNITY COMPANY

**F I L E D**

AUG 2 3 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

**JCS**

C 99- 3942

KAMRAN NASIRI,

     Plaintiff,

vs.

ALLSTATE INDEMNITY COMPANY and
DOES ONE through FIFTY inclusive,

     Defendants.

Case No.

NOTICE OF REMOVAL OF CIVIL
ACTION

     TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN

DISTRICT OF CALIFORNIA:

     PLEASE TAKE NOTICE that pursuant to 28 U.S.C. sections 1441(a) and 1446, defendant

Allstate Indemnity Company hereby removes this action to this Court, on the ground that this Court

has original jurisdiction over this action under 28 U.S.C. section 1332.

The Superior Court Action

     1.     On June 18, 1999, plaintiff commenced the action entitled "*Kamran Nasiri, Plaintiff,*

*vs. Allstate Indemnity Company and Does One through Fifty inclusive, Defendants,*" in the Superior

Court of the State of California for the County of Alameda, Case No. 813673-2 (the "Superior Court

Action"). Allstate's registered agent received a copy of the Summons and Complaint by regular

///

SONNENSCHEIN
ATH & ROSENTHAL
5 MARKET STREET
6th FLOOR
SAN FRANCISCO
CA 94105

Not. of Removal of Civ. Action

1   mail on July 22, 1999. Allstate filed and served its Answer on August 20, 1999. Copies of the

2   Summons, Complaint and Allstate's Answer are attached hereto as Exhibit A.

### Diversity of Citizenship

3

4   2.    This action is between citizens of different states. Plaintiff is now, and was when this

5   action was filed, a citizen of the State of California. (Complaint ¶ 1.) Defendant Allstate is now,

6   and was when plaintiff filed this action, a citizen of the State of Illinois: It is incorporated in and has

7   its principal place of business in the State of Illinois. "Doe" defendants must be disregarded in

8   determining diversity of citizenship. 28 U.S.C. § 1441(a) ("For purposes of removal under this

9   chapter, the citizenship of defendants sued under fictitious names shall be disregarded.").

### Amount In Controversy

10

11  3.    The amount in controversy in the Superior Court Action, exclusive of interest and

12  costs, more likely than not exceeds the $75,000 jurisdictional minimum. See Sanchez v.

13  Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (standard for determining amount in

14  controversy is whether the amount "more likely than not" exceeds the jurisdictional minimum).

15  Plaintiff seeks contract damages, tort damages for Allstate's alleged breach of the covenant of good

16  faith, including alleged emotional distress damages, attorneys' fees, and punitive damages, in

17  unspecified amounts. The punitive damage claim alone more likely than not brings the Superior

18  Court Action well past the $75,000 minimum. See Samuel R. Gross & Kent D. Syverud, Don't Try:

19  Civil Jury Verdicts in a System Geared to Settlement, 44 UCLA L. Rev. 1, 34, table 19 (October

20  1996) (mean punitive damage award in California from 1990 to 1991 was $490,000); Moore v.

21  American United Life Ins. Co., 150 Cal. App. 3d 610, 635-6, 642 (1984) (affirming $2.5 million

22  punitive damages award, 40 times the amount of compensatory damages); Wetherbee v. United Ins.

23  Co. of Amer., 18 Cal. App. 3d 266, 271-2 (1971) (affirming $200,000 punitive damage award, 190

24  times the $1,050 compensatory damage award).

### Original Jurisdiction

25

26  4.    Based on the foregoing, this Court has original jurisdiction over the Superior Court

27  Action under 28 U.S.C. section 1332. Plaintiff and Allstate are citizens of different states, and the

28  amount in controversy exceeds $75,000, exclusive of interest and costs. This action is therefore one

SONNENSCHEIN
NATH & ROSENTHAL
5 MARKET STREET
6TH FLOOR
SAN FRANCISCO
CA  94105

-2-                                    Not. of Removal of Civil Action

1  that may be removed to this Court by defendant Allstate pursuant to 28 U.S.C. sections 1441(a) and

2  1446.

3        WHEREFORE, Allstate hereby gives notice that this action has been removed, in its entirety,

4  from the Superior Court of the State of California for the County of Alameda, to the United States

5  District Court for the Northern District of California.

6  Dated:  August 23, 1999                    SONNENSCHEIN NATH & ROSENTHAL

7

8                                            By: _____

9                                                    Letitia R. Todd

10

11                                            Attorneys for Defendant
                                              ALLSTATE INDEMNITY COMPANY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26     27023157

27

28

SONNENSCHEIN
ATH & ROSENTHAL
5 MARKET STREET
8TH FLOOR
SAN FRANCISCO
CA  94105

-3-                              Not. of Removal of Civil Action

08/17/99    08:45    ALLST   PLEASANTON   

ENDORSED
FILED
ALAMEDA COUNTY

JUN 1 8 1999

CLERK OF THE SUPERIOR COURT
By _____PAM WILLIAMS_____
                              Deputy

1   Robert F. Campbell (CSBN 136153)
    2831 Telegraph Avenue
2   Oakland, CA 94609
    Telephone: (510) 835-1948
3   Facsimile: (510) 835-2418

4   Attorney for Plaintiff
    Kamran Nasiri

5

6          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                  IN AND FOR THE COUNTY OF ALAMEDA

8   KAMRAN NASIRI,                        No.  813673-2

9              Plaintiff,                  COMPLAINT FOR BREACH OF
                                           CONTRACT; BREACH OF THE
10      vs.                                COVENANT OF GOOD FAITH
                                           AND FAIR DEALING;
11  ALLSTATE INDEMNITY                     INJUNCTIVE RELIEF AND
    COMPANY and DOES ONE                   RESTITUTION
12  through FIFTY inclusive,               [DEMAND FOR JURY TRIAL]

13             Defendants

14

15  _____/

16      COMES NOW PLAINTIFF KAMRAN NASIRI who alleges as follows:

17      1.    Plaintiff Kamran Nasiri ("Plaintiff") is now and at all times mentioned herein

18  was a resident of the City of Fremont, County of Alameda, California.

19      2.    Plaintiff is informed and believes and thereupon alleges that defendant Allstate

20  Indemnity Company (hereinafter "Allstate"), is and at all times herein mentioned was a

21  corporation licensed to do business, and doing business, in the State of California providing

22  liability and indemnity insurance.

23      3.    Plaintiff is informed and believes and thereupon alleges that Allstate is and at

24  all times herein mentioned was an insurer that is authorized to issue and deliver automobile

25  liability and indemnity policies in the State of California.

26      4.    Plaintiff is unaware of the true identity, nature and capacity of each of the

27                                                                                    1

28

1  defendants designated herein as a DOES One through Fifty, inclusive. Plaintiff is informed
2  and believes and thereupon alleges that each of the defendants designated herein as a DOE is
3  in some manner responsible for the damages and injuries as are alleged in this complaint.
4  Upon learning the true identity, nature and capacity of the defendants Does One through
5  Fifty, Plaintiff will pray for leave to amend this complaint to allege their true names and
6  capacities.

7       5.   Plaintiff is informed and believes and thereupon alleges that at all material
8  times herein alleged defendants and each of them were the agents, servants, associates and
9  employees of the other defendants, and each of them.

10       6.   Plaintiff purchased an automobile insurance policy (no. 699783885), from
11  defendants and each of them (hereinafter the "Nasiri Policy"), which was amended, effective
12  December 19, 1997, to provide Plaintiff coverage for loss due to fire to Plaintiff's vehicle, a
13  1996 Plymouth Voyager, PIN number 2P4GP4435TR559667, License Plate No. 3TRU223
14  (the "Voyager"). Plaintiff is and was at all relevant times the registered owner of the
15  Voyager. Plaintiff is informed and believes and thereupon alleges that prior to amending the
16  Nasiri Policy to provide such coverage to Plaintiff for the Voyager, Allstate inspected the
17  Voyager. Plaintiff is informed and believes and thereupon alleges that Allstate's inspection
18  of the Voyager was for the purpose of determining the value of the Voyager, that Allstate
19  determined from that inspection that the replacement value of the Voyager exceeded $16,000
20  and that Allstate calculated Plaintiff's insurance premium for the Voyager according to this
21  valuation. A true and correct copy of proof of the Nasiri Policy is attached hereto as
22  Exhibit A and is incorporated herein by reference as though fully set forth at length.

23       7.   Plaintiff is informed and believes and thereupon alleges that the Nasiri Policy
24  was delivered to Plaintiff in the State of California and that all premiums for the Nasiri
25  Policy were paid in California.

26       8.   On, or about, February 27, 1998, at about 6:00 p.m., Plaintiff was driving the
27  Voyager on Mission Boulevard in Fremont California, near Seven Hills, when a fire occurred

28

2

1    in the engine compartment of the Voyager (the "Voyager Fire"). Plaintiff pulled to the side

2    of the Highway and the fire was extinguished. Plaintiff is informed and believes and

3    thereupon alleges that the fire caused damage to the Voyager ("Plaintiff's Loss") in an

4    amount which has been estimated to be $7,869.83 by Western Appraisers, 38 Washington

5    Avenue, Pt. Richmond, California. The Voyager Fire and Plaintiff's Loss are hereinafter

6    referred to as the "Incident". A true and correct copy of the estimate of Plaintiff's Loss is

7    attached hereto as Exhibit B.

8         9.    Plaintiff is not aware of the cause of the Voyager Fire, except that the Voyager

9    Fire appears to have originated in the engine compartment of the Voyager. Plaintiff is

10   informed and believes and thereupon alleges that Allstate has not inspected the Voyager to

11   determine the cause and origin of the Voyager Fire.

12        10.   Plaintiff notified defendants, and each of them, of the Incident on, or about,

13   February 28, 1998 and has demanded that Allstate repair the Voyager or pay Plaintiff the

14   replacement value of the Voyager as provided by the Nasiri Policy. Plaintiff is informed and

15   believes and thereupon alleges that the Voyager was towed to an automotive repair shop in

16   Hayward, California after the fire was extinguished and that several days later the Voyager

17   was towed to a storage yard or lot under Allstate's control on. Plaintiff is informed and

18   believes and thereupon alleges that following the Incident the Voyager has remained under

19   the exclusive possession and control of Allstate.

20        11.   Plaintiff has performed all of his obligations required of Plaintiff by the Nasiri

21   Policy, except for those obligations which because of the breach by defendants, and each of

22   them, as alleged herein, Plaintiff has been excused or prevented from performing.

23        12.   Plaintiff is informed and believes and thereupon alleges that the defendants,

24   and each of them, have deliberately misrepresented to Plaintiff pertinent facts and/or

25   insurance policy provisions relating to the coverage at issue under the Nasiri Policy.

26        13.   Plaintiff is informed and believes and thereupon alleges that the defendants,

27   and each of them, have failed and refused to adopt and implement reasonable standards for

28

3

06/17/99    08:46    ALLST

1    the prompt investigation and processing of Plaintiff's claim arising under the Nasiri Policy.

2        14.    Plaintiff is informed and believes and thereupon alleges that the defendants,

3    and each of them, have failed and refused to affirm or deny coverage of Plaintiff's claim

4    within a reasonable time after proof of loss requirements were completed and submitted by

5    Plaintiff.

6        15.    Plaintiff is informed and believes and thereupon alleges that the defendants,

7    and each of them, have failed and refused to investigate Plaintiff's claim thoroughly.

8        16.    Plaintiff is informed and believes and thereupon alleges that the defendants,

9    and each of them, have failed and refused to investigate Plaintiff's claim objectively.

10        17.    Plaintiff is informed and believes and thereupon alleges that the defendants,

11    and each of them, have engaged in dilatory claims handling to avoid payment of Plaintiff's

12    claim.

13        18.    Plaintiff is informed and believes and thereupon alleges that the defendants,

14    and each of them, have engaged in deceptive practices to avoid payment of Plaintiffs' claim.

15        19.    Plaintiff is informed and believes and thereupon alleges that the defendants,

16    and each of them, have engaged in abusive and coercive practices to avoid payment of

17    Plaintiffs' claim.

18        20.    Plaintiff is informed and believes and thereupon alleges that the defendants,

19    and each of them, have improperly engaged in post-claim underwriting to avoid payment of

20    Plaintiffs' claim.

21        21.    Plaintiff is informed and believes and thereupon alleges that the defendants,

22    and each of them, have disregarded other rights of Plaintiff to avoid payment of Plaintiffs'

23    claim.

24        22.    Plaintiff is informed and believes and thereupon alleges that as a result of the

25    breaches of contract by the defendants, and each of them, as herein alleged, Plaintiff has

26    been injured and damaged from the failure of defendants, and each of them, to repair or

27    replace the Voyager within a reasonable period of time.

28

08/17/99    08:46    ALLST ← PLEASANTON MLU → 4155435472

23.    Plaintiff is informed and believes and thereupon alleges that the denial of benefits by defendants, and each of them, as herein alleged, was vexatious and without reasonable cause. Pursuant to Insurance Code Section 1619, Plaintiff is entitled to reasonable attorneys' fees incurred in prosecuting this action in an amount to be proved at time of trial.

24.    Plaintiff is informed and believes and thereupon alleges that the conduct of defendants, and each of them, as alleged herein, breached the implied covenant of good faith and fair dealing arising out of the Nasiri Policy in that the denial of benefits as alleged by Plaintiff was done by the defendants without reasonable cause. Plaintiff is informed and believes and thereupon alleges that Defendants knew that Plaintiff was entitled to have the Voyager repaired or replaced, but failed and refused to provide Plaintiff that benefit due under the Nasiri Policy. As a direct and proximate and legal result of the unreasonable conduct of the defendants, and each of them, as herein alleged, Plaintiff has been required to retain an attorney to obtain the benefits due to Plaintiff under the Nasiri Policy. Plaintiff has suffered emotional distress as a direct result of the conduct of the defendants, and each of them which manifested itself in Plaintiff through anxiety, loss of sleep and other physical manifestations.

25.    Plaintiff is informed and believes and thereupon alleges that as a direct result of the tortious conduct of the defendants, and each of them, Plaintiff was damaged and injured. Plaintiff is therefore entitled to recover:

    a.    Reasonable attorneys' fees incurred by Plaintiff in obtaining policy benefits in an amount that is to be proved at the time of trial;

    b.    An award of general damages as compensation for Plaintiff's emotional distress in an amount that is to be proved at the time of trial;

    c.    The replacement value of the Voyager, plus pre-judgement interest, in an amount that is to be proved at the time of trial.

26.    Plaintiff is informed and believes and thereupon alleges that defendants, and

08/17/99    08:45    ALLSTATE PLEASANTON MLU → 4159455472

1  each of them, intentionally engaged in a course of conduct as herein alleged which was

2  intended to oppress Plaintiff and to dissuade Plaintiff from seeking benefits due to Plaintiff

3  under the Policy.

4         27.    Plaintiff is informed and believes and thereupon alleges that the failure and

5  refusal of the defendants, and each of them, to carry out their obligations under the insurance

6  policy, as herein alleged, and the acts of their agents, were all done with a conscious

7  disregard of the rights of the Plaintiff to receive the benefits due to him under the policy.

8  These acts were done with the knowledge and approval and ratification of the defendants and

9  each of them. These acts continued even after Plaintiff protested to the defendants and

10  Plaintiff was powerless to obtain from the defendants compliance with their obligations.

11  Plaintiff is therefore entitled to recover punitive damages.

12         28.    Plaintiff is informed and believes and thereupon alleges that defendants, and

13  each of them, have engaged in and continue to engage in unlawful claims practices as alleged

14  herein.

15         29.    Plaintiff is informed and believes and thereupon alleges that Plaintiff has been

16  denied coverage and will continue to be denied coverage due to the unlawful claims practices

17  of defendants as alleged herein.

18         30.    Plaintiff is informed and believes and thereupon alleges that no adequate

19  remedy at law lies for defendants' continuing violations.

20         31.    Plaintiff is informed and believes and thereupon alleges that the damages

21  sought by Plaintiff exceed the minimum jurisdictional limit of this court.

22                                    **PRAYER**

23  WHEREFORE, Plaintiff prays for

24         A.    Damages according to proof for breach of contract, including the replacement

25  value of the Voyager, plus pre-judgement interest;

26         B.    General and compensatory damages including, but not limited to, injuries

27  resulting from humiliation, mental anguish and emotional distress according to proof;

28                                                                        6

1    C.    Attorneys' fees incurred in bringing this action pursuant to Insurance Code

2    Section 1619;

3    D.    Attorneys' fees incurred in obtaining policy benefits, as provided by law;

4    E.    Prejudgement interest in an amount to be proved at time of trial;

5    F.    Punitive damages in an amount sufficient to deter and make an example of

6    defendants;

7    G.    A permanent injunction enjoining defendants, their agents, successors and

8    employees and those acting in concert with them from engaging in each of the unlawful

9    practices, policies, usages and customs set forth herein;

10    H.    Attorneys' fees in bringing the claim for injunctive relief as provided in

11    Business and Professions Code Section 17200;

12

13    I.    An award of restitution as provided in Business and Professions Code Section

14    17200;

15    J.    Costs of suit incurred herein; and

16    K.    Such other and further relief as the court may deem just and proper.

17

18    _____    June 16, 1999

        Robert F. Campbell        Date

19

20    **DEMAND FOR JURY TRIAL**

21    Plaintiff hereby demands a trial by jury.

22

23    _____    June 18, 1999

24    Robert F. Campbell        Date

25

26

27

28

7

1

<u>PROOF OF SERVICE BY MAIL</u>

2

    I am a citizen of the United States and employed in the City and County of San Francisco.

3

I am over the age of eighteen years and not a party to the within action. My business address is

4

SONNENSCHEIN NATH & ROSENTHAL, 685 Market Street, Sixth Floor, San Francisco,

5

California 94105.

6

    On, August 23, 1999, I caused to be served by mail the following document:

7

**NOTICE OF REMOVAL OF CIVIL ACTION**

8

by placing it in a sealed envelope with postage prepaid and depositing it with the United States

9

Postal Service addressed as follows:

10

Robert F. Campbell, Esq.
2831 Telegraph Avenue
Oakland, CA 94609

11

12

    I declare under penalty of perjury under the laws of the State of California that the

13

foregoing is true and correct, and was executed on August 23, 1999, at San Francisco, California.

14

15

16

KATHERINE CARR JAMES

17

18

19

20

21

22

23

24

25

26

27

28